# The Medical and Surgical Society of Montgomery County *v.* Weatherly.

*Application by Corporator, Wrongfully Disfranchised, for Mandamus to compel Restoration.*

1. *Corporator wrongfully amoved or disfranchised ; when mandamus lies to restore.*—The writ of mandamus will be awarded against a private corporation, at the instance of one of its members who has been disfranchised or amoved, to compel his restoration to membership, and to the enjoyment of corporate franchises, when the cause of disfranchisement or amotion is in law insufficient, or where the proceedings are irregular, as tested by the charter or by-laws of the corporation ; but, in such case, no inquiry can be had into the merits of what has been regularly done, in the due course of proceeding.

2. *Penal provisions ; how construed.*—The principle, that penal provisions, especially when summary in character, and operative to produce a forfeiture of valuable rights, are to be strictly construed, is as applicable to the by-laws and regulations of voluntary societies, whether incorporated or not, as to constitutional and statutory enactments and municipal ordinances.

3. *Constitution of voluntary association ; binding on corporation.* While the constitution of a voluntary association may be in the nature of a contract between the members, who are bound by its provisions, by reason of express assent in assuming the obligations of membership, such constitution is equally binding upon the society in its corporate capacity.

4. *Same ; forfeiture not favored.*—While it may be competent for a member of a voluntary association, incorporated in this State, to bind himself by agreement to forfeit his membership upon a specified condition, and such forfeiture may be made to take effect at a time fixed, without special or personal notice to him, a construction leading to such a result will not ordinarily be adopted by the courts, unless the intention to waive notice may be inferred from uniform custom in the particular business, or is clearly expressed in the most unambiguous and explicit language.

5. *Disfranchisement or amotion of member of voluntary society ; nature of power, and how exercised.*—The power to disfranchise a member, or to remove an officer generally resides in the body of every corporate society, is judicial in its nature, and must be exercised by a vote of the society, expressing the corporate will ; and, ordinarily, the records or minutes of the body must show that the requisite steps were taken in compliance with the charter and by-laws of the corporation, after reasonable notice to the party charged, either express or implied.

6. *Same ; what merely a ground of forfeiture of membership.*—The constitution of a voluntary medical society, incorporated in this State, after providing that every member shall pay into the treasury a designated

[Medical & Surgical Society of Montgomery Co. v. Weatherly.]

annual contribution, to become due and payable on 1st January of each year, declares that if the contribution is not paid by the first meeting in April thereafter, the defaulter shall *forfeit his membership*, and his name shall be stricken from the roll of members, " and of this he shall be duly notified by the secretary;" and imposes upon the treasurer the duty of serving, on or about 1st March of each year, upon every member in arrears a written notice, calling his attention to the foregoing requirement. It is further declared that "the first regular meeting in April of each year shall be the regular meeting for the revision of the roll of members," at which the treasurer is required to report " the names of all members whose dues for the year have not been paid," and all such names " shall be immediately stricken from the roll," the treasurer being declared " personally responsible to the society for the dues of all defaulting members not so reported;" and by another article relating to the duties and office of treasurer, it is further provided as follows : The treasurer " shall report to the society, at the annual meeting for the revision of the roll, a written statement of the names of members who are in arrears for the dues of the year so that they may be stricken from the roll ; and he shall himself be held personally responsible for the dues of all delinquents whom he fails to report; but this written statement shall not be spread upon the minutes." Another article provides in detail for the order of business at what is designated as " the regular meeting for the revision of the roll," specifying, *inter alia*, " the treasurer's report of members in arrears," and the "revision of the roll by the secretary;" and, in another article, it is declared that " any one of these orders of business may be suspended at any time by the vote of a majority of the members present at any meeting.    *Held*,

(*a*) That these several provisions being construed *in pari materia*, as they should be, the non-payment of annual dues by a member, by the first meeting in April, is not, *ipso facto*, a forfeiture of membership, but only a ground of forfeiture, in the nature of a judgment *nisi*, to be made final by the vote of the society.

(*b*)  That, no statement or report having been made by the treasurer at the regular meeting in April, as required by the constitution, and no vote of the society having been taken on the subject, the mere reading, at that meeting, of the name of a member from a book as a delinquent, did not operate a forfeiture of his membership.

(*c*)  That the action of the society at a subsequent meeting, of which such delinquent had no notice, actual or constructive, declaring a forfeiture of his membership for non-payment of dues, was irregular and not binding on him, and, on his application, *mandamus* will lie to vacate it, and restore him to membership.

APPEAL from City Court of Montgomery.

Tried before Hon. T. M. ARRINGTON.

This was an application by J. S. Weatherly, a licensed and practicing physician, residing in the city of Montgomery, for a writ of *mandamus* against the Medical and Surgical Society of Montgomery County, a body corporate, to compel the respondent to restore the relator to membership and office in said society. The petition, after averring the incorporation of the society by an act of the General Assembly of this State, approved February 6th, 1866, and the subsequent adoption of a constitution for its government, and after setting out certain provisions of that constitution, the portions of which necessary to an understanding of the points decided, are stated in the opinion, avers

that shortly after the incorporation of the society, the relator was duly elected and admitted a member thereof; that at a regular meeting of the society, in January, 1880, the relator was elected a member of the Board of Censors, a board provided for by said constitution, and he has ever since acted as a member of said board; that at the first regular meeting in April, 1884, the treasurer of the society made a verbal report, that relator was in arrears for his dues for the year, when the president directed the secretary to strike relator's name from the roll of members, and thereupon his name was stricken from the roll; that no written statement of the names of the members of the society who were in arrears for the dues of the year, was reported or made at said meeting, or at any other meeting, by the treasurer; that, at no time, was any vote taken, or resolution adopted, or trial had by the society, by which it was declared or determined that the membership of relator had been forfeited, and his name should be stricken from the roll of members; that no notice was, at any time, given to him, that the treasurer had made any report, verbal or written, that he was in arrears for his dues, and no opportunity was ever given him to controvert or excuse the fact that he was in arrears; that at or before said meeting in April, 1884, no charge was made against him with respect to said dues other than said verbal report; and that he was not present at said first meeting in April. It is also averred that, at a meeting held on 26th April, 1884, the society elected John H. Blue a member of the Board of Censors for the relator's unexpired term; and, at a meeting held on 3rd May, 1884, the society adopted an ordinance, requiring and commanding said board to convene on 5th May, 1884, and to then and there admit and treat said Blue as a censor duly elected by the society in the relator's place and stead, and thereafter to treat and recognize said Blue as such censor. It is charged that all said proceedings were without authority and void; and that thereby relator is wrongfully denied the privileges of his membership in said soceity, etc. An excuse is given for the failure to pay his dues, which need not be here stated. The prayer of the petition is, that a rule be issued against said society, to show cause why a peremptory *mandamus* should not issue to compel said society to restore the relator to membership therein, and to rescind the ordinance requiring the Board of Censors to receive and admit said Blue as a member thereof, in the relator's stead, and to proceed no further under said ordinance.

A rule having been issued and served as prayed, the society appeared, craved oyer of its constitution, which is fully set out, and demurred to the petition and rule, assigning numerous grounds. The demurrer was overruled, and thereupon the

society filed an answer, insisting that, by its constitution, a copy of which is exhibited, it was fully authorized and lawfully empowered to do each and every thing which is complained of, or alleged in the petition, and alleging that, at the time of the adoption of the constitution, the relator was a member of the society, and continued to be such member until the first regular meeting in April, 1884, which was held on the fifth day of that month, and was the regular meeting, according to the constitution, for the revision of the roll of members, when he lost his membership, and was duly stricken from the roll of members, on account of the non-payment of his dues, which became due and payable on 1st January, 1884; "and of all this the relator was duly notified by the secretary of said society, before the meeting which was held on April 12th, 1884." It is again and further averred in the answer, that the relator "was duly stricken from the roll of members of said society, at its first regular meeting in April, 1884, by the secretary of said society, on the revision of said roll at that meeting, and on the report of said treasurer, which he made by reading from the treasurer's book, in which the account of annual dues was kept by said treasurer, which report stated the fact to said society, that the annual contribution of six dollars which was due by said Weatherly to said society on 1st January, 1884, remained wholly unpaid; and that the treasurer had before, to-wit, on or about 1st of March, 1884, served upon said Weatherly a written notice, calling his attention to the requirements of article eight of said constitution, and to the penalty therein prescribed for delinquents; and that said report of said treasurer was true in point of fact;" that the minutes of said meeting of 5th April, 1884, including the roll of members as then revised, "were duly read at, and approved by the next regular meeting of said society thereafter, which was duly held on April 12th, 1884; and that at this last meeting, the roll as revised was duly called, and no objection made thereto." The petition then proceeds: "Except as otherwise shown in this answer, the statement contained in said alternative writ [the recitals of the averments of the petition] as to the manner in which said Weatherly was stricken from the roll of said society at the said first regular meeting in April, 1884, is here admitted to be substantially correct."

It is further averred that at "the regular meeting of said society, on April 12th, 1884," a resolution offered by a member, declaring, in substance, that the proceedings of the society at the first regular meeting in April, striking the relator's name from the roll of members, were null and void, was lost; and that "at the regular meeting of the society, on 26th April, 1884," an ordinance or resolution was adopted, ordaining and

declaring, in substance, that the relator's name was properly stricken from the roll of members on 5th April, 1884, according to the constitution; and that his place on the Board of Censors was vacant, and that the society proceed to fill the vacancy by election. Dr. Blue was then elected, and the secretary instructed to notify the board of the election. On 3rd May, 1884, as is further averred in the answer, another regular meeting of the society was held, at which the society refused to receive the relator's dues, which were then tendered; and, having been officially informed that the Board of Censors refused to recognize Dr. Blue as a member of the board in the relator's stead, the society passed an ordinance or resolution, directing the board to hold a meeting at a stated time and place, and then and there to admit and treat said Blue as a censor of the society in the place and stead of the relator, who, it is again declared, had lost his membership and office. It is also insisted that the constitution provided for an appeal, in such case, to the State Medical Association; and it is averred that the relator had never made application to the society to be restored by it to his membership therein, nor to his office of censor; and that he had never appealed to the State Association "as to any of the aforesaid matters."

To the answer the relator demurred, assigning numerous grounds. The court sustained the demurrer, and, the respondent declining to plead over, granted the writ as prayed. The rulings on the demurrers above noted, and the final judgment are here assigned as error.

RICE & WILEY and W. S. THORINGTON, for appellant.

D. CLOPTON, W. L. BRAGG, TROY & TOMPKINS and GUNTER & BLAKEY, contra

SOMERVILLE, J.—This is an application for the writ of *mandamus* by the relator, Dr. J. S. Weatherly, a licensed and practicing physician, seeking to vacate certain proceedings of the Medical and Surgical Society of Montgomery County, a voluntary association incorporated under the laws of this State by whose corporate action he claims to have been irregularly, and illegally deprived of his membership in said society, and excluded from its privileges.

We can entertain no doubt of the jurisdiction of the courts of this State to interfere, in all proper cases, by *mandamus*, as an appropriate remedy for the wrongful disfranchisement or amotion of a corporator, and to restore him to the enjoyment of a franchise of which he has been illegally deprived. This right of supervision over bodies corporate is one of great antiquity

in our law, and is regarded as derived from the visitatorial power, always impliedly reserved by the Sovereign or the State in granting corporate charters, and which is exercised through the courts of common law jurisdiction.—High on Extr. Rem. §§ 291, 293. The modern and better view is, that this right of judicial visitation is not confined to public corporations, but extends as well to those of a purely private nature. Nor is it limited to such as are organized strictly for business purposes, or pecuniary profit, but is made applicable also to corporations formed for eleemosynary, religious, scientific, or other like purposes.—Angell & Ames' Corp. § 704; *State v. Milwaukee Cham. Commerce*, 47 Wis. 670. The King, under our ancient law, was the legally constituted visitor of all corporations, whose franchises may have been granted to subjects by his grace and authority, a jurisdiction, which was exercised through the medium of the courts, and the chief function of which was "to render their charters, or constitutions, ordinances and by-laws of perfect obligation, and generally to maintain their peace and good government."—Angell & Ames' Corp. (11th Ed.) § 684; 2 Kent, Com. 300. The just reason is that a corporate franchise is property, incorporeal, it is true, but deemed none the less valuable in the eye of the law. Each individual member, as remarked by Sir William Blackstone, is said in such cases to be the owner of the franchise, and his privilege of membership, we may add on high authority, is, therefore, properly subject to the protection of the courts as valuable, although it may have no actual market value.—2 Black. Com. 37; *State v. The Georgia Medical Society*, 38 Ga. 608; Moses on Mandamus, p. 184; *Dartmouth College v. Woodward*, 4 Wheat. 518.

The purposes for which this jurisdiction is commonly exercised is left in no doubt by the authorities. In High, on Extraordinary Remedies, § 294, it is said to be now a well established rule, that "*mandamus* will lie to restore to his corporate rights a member of a corporation who has been improperly disfranchised or irregularly removed from his connection with the corporation. And while the court will not inquire into the *merits* of the decision of corporate authorities in expelling or removing a corporator in the regular course of proceedings, yet, if the amotion has been conducted without due authority, the courts will interfere by *mandamus* to compel the restoration of the member to his corporate franchise." The same rule is declared, in substance, in Angell & Ames on Corporations (11th Ed.), § 695, where it is said that this jurisdiction will be exercised for compelling corporations generally "to observe the ordinances of their constitution, and to respect the rights of those entitled to participate in their privileges." "If a cor-

porator has been unjustly or irregularly amoved or suspended from his office, or disfranchised, the court," it is added, "will grant *mandamus* to restore him."—*Ib.* § 704. By a more recent writer, of respectable authority, the doctrine is stated as follows : " A *mandamus* will issue in all cases to compel a corporation, or any particular officer, to perform any plain duty required by law in favor of a member or other interested party, whether such duty is imposed either by statute, charter, custom or contract."—Woods' Field on Corp. § 462. In the light of these authorities, and the numberless adjudged cases upon which they are predicated, and by which they are fully sustained, we think the rule may be regarded as firmly established, that, in every case of the disfranchisement of a corporator, the courts will entertain jurisdiction to restore him by *mandamus*, where the cause or ground of disfranchisement is legally insufficient, or where the proceedings by which it has been attempted are irregular, according to, or as tested by the charter or by-laws of the corporation. But no inquiry will be made into the merits of what has been regularly done by due course of proceeding.—*Com. v. The German Society*, 15 Penn. St. 251. The aim of the courts, as said by Mr. Justice Sergeant, in *Commonwealth v. The Pike Beneficial Society*, 8 Watts & Serg. 247, is to preserve corporate tribunals "in the line of order, and to correct abuses."—High on Extr. Rem. §§ 294, 297–304 ; Woods' Field Corp. § 462 ; Angell & Ames' Corp. (11th Ed.) § 704. The earnestness with which this particular subject of contention has been urged at the bar, on argument, has induced us to discuss it with greater elaboration than we might otherwise have indulged.

We need scarcely add that the jurisdiction under discussion is one which should never be rashly asserted, but always with due caution, and with a just regard for the rights of a majority of the corporators of any organized body or society, which may have expressed its will as to any matter under consideration, within the lawful scope of its charter, constitution, or by-laws.

The points of contention raised by the pleadings in this cause may be reduced to two simple inquiries :

(1) Whether the relator has, under the constitution of the medical and surgical society, of which he claims to be a member, forfeited his membership, *ipso facto*, by a failure to promptly pay his annual dues to the treasurer, without regard to *corporate action* by the society, or *notice* of such action to the relator.

(2) Whether the action of the society in declaring such forfeiture, or disfranchisement, is *regular*, as being in substan-

tial compliance with the constitution or organic laws adopted for the government of its proceedings.

The several articles of the society's constitution, which are pertinent to these inquiries are the following:

"Sec. IV, art. 8. Every member shall pay into the treasury an annual contribution of six dollars, which shall be due and payable on the first of January of each year; and if it be not paid by the first meeting in April of each year, the defaulter shall *forfeit his membership*, and his name shall be stricken from the roll of members; and of this he shall be duly notified by the secretary."

Article 35 imposes upon the treasurer the duty of serving, on or about the beginning of March of each year, a written notice upon every member whose annual dues remain unpaid, calling his attention to the requirements of the foregoing article as to delinquents.

Article 15, section v, declares that "the first regular meeting in April, of each year, shall be the regular meeting for the revision of the roll of members." At this meeting the treasurer is required to report "the names of all members whose dues for the year have not been paid," and all such names, it is added, "shall be immediately stricken from the roll," the treasurer being declared to be "personally responsible to the society for the dues of all defaulting members not so reported."

Article 36, section x, relating to the duties and office of treasurer, more fully prescribes the nature and purpose of this report, as follows:

"Article 36. He shall *report to the society*, at the annual meeting for the revision of the roll, *a written statement* of the names of members who are in arrears for the dues of the year, *so that they may be stricken from the roll*, and he shall himself be held personally responsible for the dues of all delinquents, whom he fails so to report; but this written statement shall not be spread upon the minutes."

Article 59 provides in detail for the order of business, at what is designated as "the regular meeting for the revision of the roll," specifying, among many others, "the treasurer's report of members in arrears," and "the revision of the roll by the secretary." Article 63 declares that any one of these orders of business may be "suspended at any time by *the vote* of the majority of the members present at any meeting."

There are no other articles of the society's constitution which, in our opinion, materially affect the question under consideration. Those clauses relating to offenses and punishments, constituting section XII, very clearly embrace only malfeasance in office, and certain acts of unprofessional conduct, upon conviction of which, after formal charge and regular

trial, the accused is liable to be reprimanded, suspended or ex-
pelled, at the pleasure of the society.—Articles 47–49. They
have no reference to the forfeiture of membership for failure
to pay dues. We need not, therefore, consider them in the
construction of the articles under immediate consideration.

It is not denied that the relator, Weatherly, was in default
by reason of his failure to make punctual payment of his an-
nual dues. It is true that for this he offers an excuse, but with
the sufficiency of this we have nothing to do, the merit or de-
merit of it being a matter within the peculiar cognizance of
the society. Our. inquiry is confined to the mere legal con-
struction of the foregoing provisions of the constitution im-
posed by this society upon itself for its own orderly govern-
ment, and which must be taken as the law of the case, so far
as they are violative of no rule of law or canon of reason. In
this work of construction, however, there are certain cardinal
rules of interpretation which must be constantly kept in mind.
No principle, in the first place, is better settled, as a mere
axiom of universal application, than that all penal laws and reg-
ulations must be strictly construed, especially when they are
summary in their character, and operate to produce a forfeiture
of valuable rights. "The general policy of the law," more-
over, as observed by a learned Justice, speaking for the New
York Court of Appeals, in *The People v. The Medical Society
of the County of Erie*, 32 N. Y. 187, "is opposed to sharp and
summary judgment, where the party whose rights are in jeop-
ardy has no opportunity to be heard in his own defense." This
has been properly urged by counsel as a controlling and pivotal
principle in the decision of this cause. It is applicable to ordi-
nances of sovereign conventions, constitutions of government,
Federal and State, the statute laws of all civil polities, whether
republican or monarchical, the ordinances of municipalities,
and to the by-laws and regulations of voluntary societies,
whether incorporated or unincorporated.

It may be admitted, as argued by appellant's counsel, that
the constitution of the medical society, now under discussion,
is in the nature of a contract between its members, and that
they are bound by its provisions by reason of express assent in
assuming the obligations of membership. It is equally bind-
ing, also, upon the society, as such, in its corporate capacity.
*White v. Brownell*, 3 Abb. Pr. (N. Y.) 318, 327. So it may
be admitted that it is competent for any member of such an
association to bind himself by agreement to forfeit his mem-
bership upon a specified condition, and that such forfeiture
may be made to take effect at a time fixed, without special or
personal notice to the party in default.—*McDonald v. Ross-
Lewin*, 29 Hun (N. Y.), 87. A principle somewhat analogous,

but far from identical, is settled in the case of mutual insurance companies, where, with few exceptions, the failure of the assured to make punctual payment of any premium due upon a policy held by him, may, by contract, be made to operate *ipso facto* as a forfeiture of his entire interest and membership. *Wheeler v. The Conn. Mut. Life Ins. Co.*, 82 N. Y. 543; *Ala. Gold Life Ins. Co. v. Thomas*, 74 Ala. 578. It is an important qualification, however, that no court will ordinarily adopt such a construction, unless the intention to waive notice may be inferred from uniform custom in the peculiar business, or is clearly expressed by the most unambiguous and explicit language. The question resolves itself, at last, into one of mere construction.

We have examined the constitution of this society with great care, that we might construe its various provisions in the light of those principles which must obviously govern us in arriving at a just and proper conclusion. Our opinion is, that it was never intended by the framers of this instrument, that the failure of a member to pay his annual dues should *ipso facto* operate as a forfeiture of his membership, but rather as a ground of forfeiture, in the nature of a judgment *nisi*, to be made final by the vote of the society. It is very true that the several articles of the constitution above set forth, exclusive of article 59, might well be construed to have this operation, if they stood alone without more. They seem to declare very plainly that such defaulter shall forfeit his membership upon a proper report being made by the treasurer, at a designated time, when his name shall be stricken by the secretary from the roll of members, and that he shall be duly notified of this fact by the secretary.—Articles 8, 15 and 35.

But the constitution of this society is no exception to the rule, that all such instruments, including laws, ordinances and regulations of every kind, must be so construed as to gather the true resultant of intention from all of its various parts *in pari materia*. It is our opinion that article 59 was intended to devolve the consideration of this subject of forfeiture—operating as it does in the disfranchisement of members and the amotion of officers—upon the society as a body, in its corporate capacity. The treasurer, it must be observed, is required to officially report to the society "a written statement of the names of members who are in arrears for the dues of the year, so that they may be stricken from the roll."—Art. 36, Sec. x. These dues are payable on the first of January of each year, and if not paid by the first of April following, the member is in default. The time for ascertaining and verifying such default is, in our judgment, fixed by the constitution. It must be at a time not prior to the first meeting in April of each

17

[Medical & Surgical Society of Montgomery Co. v. Weatherly.]

year, which is designated as " the regular meeting for the revision of the roll of members."—Articles 15 and 36. There are not less than *ten* separate " *orders of business* " designated for especial attention at this meeting. The *fifth* in order is the " Treasurer's Report of Members in Arrears," and the *sixth* is the " Revision of the Roll by the Secretary." There are many of these orders of business which manifestly demand the action of the body of the society. This we must know from the commonest knowledge of the rules of parliamentary law, which are presumptively adopted for the orderly administration of business in every association, corporation or voluntary society. It is expressly declared in article 63 that the *suspension* of any of these orders must be by " the vote of the majority of the members present at any meeting." As the paramount purpose of this regular meeting is stated expressly to be for the *revision of the roll of members*, based on the treasurer's report of members in arrears, it would be remarkable that so important an order of business should be transacted by the perfunctory action of a clerical officer without the indorsing voice of the society. Especially does this seem reasonable, in view of the fact, that such order can not be suspended without corporate action, and in view of the constitutional declaration, made elsewhere, that no member, who " stands *charged* with unprofessional conduct, or with *unpaid dues*," shall have the privilege of resigning his membership.—Art. 9, Sec. IV. The law justly regards the substance of things and their legal effect—not mere shadows and similitudes. The necessary legal effect of revising a roll, by dropping a name from it, would, in this case, operate in the disfranchisement of a member, and the amotion of an officer. The rule of law is known to be, that this power resides generally in the body of every corporate society, that it is judicial in its nature, and must be exercised by a vote of the society expressing the corporate will, and ordinarily the records or minutes of the body must show that the requisite steps were taken in compliance with the charter and by-laws of the corporation, after reasonable notice to the party charged, either express or implied.—Woods' Field Corp. § 55 ; Ang. & Ames' Corp. § 420 ; High on Extr. Rem. § 295 ; *People v. Amer. Institute*, 44 How. Pr. (N. Y.) 468 ; *State v. Georgia Med. Society*, 38 Ga. 608 ; *The People v. Mechanics' Aid Society*, 22 Mich. 86 ; *People v. Medical Society*, 32 N. Y. 187 ; *State v. Milwaukee Cham. Com.*, 47 Wis. 670. We have been cited by appellee's counsel to several cases, somewhat analogous to the present one, in which the principles above stated have been adjudged applicable where the names of members have been stricken from the rolls of membership of various clubs and associations, for failure to punctually pay their dues in accordance with the

[Medical & Surgical Society of Montgomery Co. v. Weatherly.]

provisions of their constitutions declaring membership forfeited for such reason.—*State v. Carteret Club*, 40 N. J. (Law) 295; *Com. v. German Society*, 15 Penn. St. 251; *Delacy v. Neuse River Nav. Co.*, 1 Hawks (N. C.), 274. In the case last cited it was said by the court: "It is a fundamental principle of our law, and recognized in every court of justice (and this corporation was a court when passing on the rights of its members), that no man can be condemned or prejudiced in his rights without an opportunity to be heard."

These principles can not be ignored in construing the various articles of the constitution before us. They are rules of law, of parliamentary usage, of justice and common sense, designed for the impartial protection of all alike. So much are they favored by the law that they must be implied in all cases of doubt. And that which is necessarily implied is as much a part of a constitution, a statute or a by-law, as that which is expressed.—*Ex parte The State of Alabama*, 71 Ala. 371; Potter's Dwar. Stat. 145. The revision of the roll of members must, in our judgment, be the act of the society itself, transacted, as any other order of corporate business, by the recorded vote of the body in its corporate capacity, showing the fact that the roll was revised by at least a majority of the members present and constituting a quorum, voting in the affirmative. The secretary of the society, who is the custodian of the roll and all other books, papers and records of the society, except those belonging to the office of treasurer (Art. 27), is the mere instrument and amanuensis of that body for the accomplishment of the end in view, for which the "regular meeting for the revision of the roll" was specially convened by the organic law itself. It is not impossible that the treasurer may make a mistake in designating the names of those liable to disfranchisement as defaulters. His memory may be at fault. He may have been guilty of the negligence of a clerical misprision. The fact of non-payment may be controverted, or the party in default may have some excuse, as to the merits of which he may desire to invoke the judgment of the society in waiver of his delinquency. These matters, we repeat, are subjects of investigation and determination by the corporation itself, whose exclusive privilege and prerogative it is to declare such forfeiture or disfranchisement.—*State v. Cateret Club*, 40 N. J. (Law) 295. The clerical work of revision is, in one sense, the act of the secretary, in as much as the duty of striking off names and the preparation of a revised list are devolved upon him. But the corporate act of revision, which is a legal ratification of the act of the secretary, is an order of business judicial in its character, and of great importance in its nature and results, and for these reasons, as

we have said, must be transacted by the vote of the members in their corporate capacity. This conclusion is in perfect harmony with the settled analogies of law and rules of procedure governing corporate bodies, as we find them generally declared by the text writers, and enunciated by the courts in this country. It would require a clear case, free from all doubt, to induce us to depart from these respectable precedents.

We proceed next in order to consider the questions raised as to the regularity of corporate procedure. We are of opinion that, under the provisions of article 36 of the society's constitution, the official report, required to be made by the treasurer, of all members who are delinquent in the payment of dues, is required to be made in writing, as a necessary basis for the action of the society. The language of the article is, that he "shall report to the society, at the annual meeting for the revision of the roll, a *written statement* of the names of members who are in arrears for the dues of the year, *so that* they may be stricken from the roll." We have said that this provision was penal, and must be strictly construed. It scarcely needs a strict construction, however, to authorize the conclusion, that such statement should not only be in writing, but in the form of an official report, authenticated by the signature of the treasurer. Such a report involves the statement of a fact in the nature of a charge, which is sufficiently serious in nature to debar the delinquent of the privilege of resigning, and subjects him, if true, to the loss of valuable rights—to disfranchisement as a member, and consequent amotion as an officer. There is, therefore, an idea of grave responsibility attached to such a report, which alone constitutes a sufficient reason for requiring it to be in writing—a form conveying also a suggestion of probable deliberation and verity. The fact that this statement is not permitted to be spread upon the minutes, is a strong reason why it should be in writing, as the only means of preserving a record or memorial of an important charge, upon which, as we have decided, a vote of the society is required to be taken. We are not permitted to say that a verbal report, without minutes or record, will answer, when the constitution requires a report in writing. The case of *The People v. American Institute*, 44 How. Prac. 468, cited by us *supra*, furnishes a striking illustration of how far a respectable court has carried this principle. The defendant corporation was there shown to have adopted Cushing's Manual as its rules of parliamentary government. A member being expelled for using improper language at a meeting of the society, the court, upon his application by *mandamus*, restored him upon the ground of the irregularity of the corporate proceedings by which it was sought to disfranchise him. This defect consisted in the fact that the words used were not *reduced*

[Medical & Surgical Society of Montgomery Co. v. Weatherly.]

*to writing*, and acted upon at the meeting at which they were spoken.

Applying these principles to the present case, the facts show that there was no written statement or report made by the treasurer of the society at the regular annual meeting held in April for the revision of the roll, or at any subsequent meeting. The mere reading of the name of the relator from a book, without more, very clearly was not such a written statement within the meaning of article 36 of the constitution.

It is also made to appear that there was no vote of the society taken on this subject, as required, in our opinion, by the 59th article, to the provisions of which we have above adverted. As to this fact there is no controversy. But it is insisted that the subsequent action of the society, taken on the 26th of April, and on the 3d of May following, was sufficient, at which the forfeiture of the relator's membership was expressly declared by a majority of a quorum of members present and voting. These proceedings were, in our opinion, irregular for reasons most obvious.

The rule is settled, that all members of a body corporate are presumed to know of the times appointed by the charter or by-laws for the transaction of particular business; and, therefore, no special notice is required to be given of such meeting, or of the intention to transact such business.—Dillon's Mun. Corp. §§ 200–1; Woods' Field Corp. § 201, p. 314. So it is equally well settled, that any corporate body, whether municipal or private, can transact any business at an adjourned meeting, which could have been done at the original meeting, the former being but a continuation of the latter.—Woods' Field Corp. § 203; *Warren v. Mower*, 11 Vt. 385.

It does not appear, however, that any action was taken on the subject of contention at the regular meeting fixed by the constitution for its consideration, nor was the matter adjourned to another day. If either course had been taken, the relator would, no doubt, be charged with implied or constructive notice of the proceeding, even though he were not personally present. It is no doubt to a case like this that article 8 of the constitution is especially applicable, so far as it provides, that when a member's name is striken from the roll, he shall be notified of the fact by the secretary. It is not contended that the relator, Weatherly, had any personal notice of the proceedings of the society taken on April 26th, or on May 3d, which sought to effect his disfranchisement and amotion. Nor was he chargeable, as we have seen, with implied notice. These proceedings were, therefore, irregular for want of notice under the principle which we have already announced, supported, as we believe it is, by both reason and authority. They are not, then, bind-

[Jeffries v. Castleman.]

ing upon the relator, and must be vacated on the ground of their irregularity.

We are not to be considered as deciding any principle which can be construed as denying to the Medical and Surgical Society of Montgomery County the full authority to deal with the relator, or any of its other members, in its own way and according to its own discretion, after due notice and by due course of regular procedure; provided only that their corporate action violates no established rule of law, and is in conformity to the constitution and laws of the society established for its own government. Nor do we intimate any opinion that the power of the society to take action in this matter ceased, because it was not put into exercise at the regular meeting fixed for the revision of the roll. As to this point we decide nothing. Our decision goes no further than to vacate proceedings deemed to be irregular. It does not affect the right to take other proceedings which may be regular, under the principles which we have above announced.

The judgment of the city court is construed by us to be in full accordance with these views; and it must, therefore, be affirmed, so far as it affects the rights of the relator, Weatherly.

BRICKELL, C. J., dissenting.