84 457
o137 82

# Morris *et al.* v. The State.

## Indictment for Disturbing Religious Worship.

1. *Disturbing religious worship; schism in church; rival factions attempting to worship at same time.*—On a schism or division in a church or religious society, the members of the minority faction having been expelled by the majority, and both factions afterwards assembling at the church for worship at the same time, if the officers and members of the minority attempt to conduct religious services, they are mere intruders, and the majority may lawfully remonstrate against it, and may use such means, not amounting to needless force, as may be necessary to prevent it.

2. *To what witness may testify.*—On a prosecution for disturbing religious worship, a person who was present at the time can not testify that "he was disturbed" by the acts or conduct of the defendants, but must state what their conduct or acts were.

[Morris et al. v. The State.]

APPEAL from Henry Circuit Court.

Tried before Hon. J. M. CARMICHAEL.

The defendants, Morris and others, indicted for disturbing religious worship, were members of the "majority" faction of a negro church, known as the "New Judson Church." This "majority" faction had expelled from membership in the church the "minority" faction. On the occasion of the present alleged disturbance, the defendants went into the church where services were being conducted by one Cobb, a minister of the "minority," and notified him that he could not preach there that day. The court excluded testimony which tended to show that defendants and one Ethridge, a majority minister, had assembled at the same place and time for the purpose of religious worship. Certain of the State's witnesses, who were in the congregation and were members of the "minority," were asked "if they were disturbed by the conduct and actions of the defendants;" witnesses answered that "they were disturbed." The court overruled defendants objection to the question, and motion to exclude the answer. The defendants offered in evidence a deed conveying a certain lot of land "to the members of the New Judson Church," without further identification of the grantees; which the court excluded.

THOS. N. MCCLELLAN, Attorney-General, for the State.

STONE, C. J.—There was testimony offered tending to show that Cobb, the minister, and those attending for worship under his ministration, had been expelled from membership in the church in which they were worshipping, at the time the alleged disturbance took place. Testimony was also offered, tending to show that the non-expelled members, with their minister, were also in attendance, for a like purpose. This testimony was ruled out at the instance of the prosecution. In this we hold that the circuit court erred.

Under our constitution and laws, while we accord toleration and protection to all religions which do not offend the morals of the commonwealth, we have no such thing as an established religion. Every sect or denomination of religionists is the abiter of its own doctrinal tenets. Questions of orthodoxy, or heterodoxy are determined by church judicatories, with or without appeal, as each denomination may prescribe for its own government. And whatever is determined by the church adjudication, must be regarded by the

[Morris et al. v. The State.]

civil tribunals as rightly decided, until it is reversed by a higher ecclesiastical judicatory, if the rules of the denomination have provided such higher tribunal.    This must needs be so, for civil authority can not intervene in matters of faith, unless, perhaps, measures have been resorted to, or methods adopted, which are subversive of the laws or established customs of the society or denomination.    We mean, not questions of faith; for the church judicatory is the arbiter of these.    We refer to the procedure and modes of trial. Civil authority can possibly be invoked for the protection of any one, who is denied a trial according to the rules of the association.    In reference to this however, we wish to be understood as simply leaving the question open, should it ever come before us.—*Weatherly's case*, 75 Ala. 248.

Church edifices are property; generally the property of the persons by whom they are erected or purchased, or the worshipping society, or the denomination to which the worshippers belong.    They are consecrated to public worship, and the right to their occupancy and use must, of necessity, be vested some where.    In the absence of a higher or larger jurisdiction, it pertains to the officers or members, one or both, who, with the consent, express or implied, of the persons who erect or purchase the building, obtain control of it as a place of worship.    They, as a society or organization, according to its methods of government, can open or close it at their pleasure. and no one, unless there is a paramount authority of property somewhere, can control their discretion.    And this entire right of control and government must be in the officers and membership, as the rules of the church may declare, and no part of it can be exercised by persons not members of the church.

If Cobb and those who sympathised with him had been excommunicated, they had no right in the church, other than mere strangers could assert.    They could not hold services in it, without the consent of the church, or its governing body; and if they attempted to do so, they were intruders. The officers of the church had the clear right to remonstrate against such use of their church, and to use such means, not amounting to needless force as should be necessary to prevent it.    And if the meeting was being held in the church, by excommunicated members, without the consent of the ruling authorities of the church, there was nothing done by the officers or members of the church, so far as this record discloses, which they had not a right to do.    It is not for us

[Ex parte Buckalew.]

to determine whether the expelling majority, or the excommunicated minority, or whether either, professed the orthodox faith. The repose of society, and the harmony of church organization, require this much.

Whether the deed offered in evidence was void for want of a grantee or not, is immaterial. It should cut no figure in the case.

Witnesses should not have been allowed to testify that they were disturbed. That was the inquiry the jury had to make. Facts should have been put before them, and the conclusion should have been left with them. It would seem very clear, however, that what was done must have disturbed the worshippers, if they were rightly assembled in that house for worship. What we have said will be a sufficient guide on another trial.

Reversed and remanded.