MILKIE, APPELLEE, *v.* THE ACADEMY OF MEDICINE OF TOLEDO AND LUCAS COUNTY, APPELLANT.

[Cite as Milkie v. Academy of Medicine, 18 Ohio App. 2d 44.]

(No. 6531—Decided April 9, 1969.)

*Messrs. Bugbee & Conkle, Mr. Harry S. Bugbee* and *Mr. Warren D. Wolfe,* for appellant.

*Mr. Dan H. McCullough* and *Mr. George S. Taylor,* for appellee.

POTTER, J. This is an appeal on questions of law and fact by the defendant, appellant herein, The Academy of

Medicine of Toledo and Lucas County, from a judgment of the Common Pleas Court of Lucas County ordering the defendant to reinstate to membership the plaintiff, appellee herein, Frederick E. Milkie, as a fellow of defendant, and place plaintiff's name upon the rolls of defendant as a fellow member thereof as of November 30, 1959. The plaintiff will be referred to as Milkie, and the defendant will be referred to as the Academy.

Milkie is a licensed physician and became a member of the Academy in May 1947, first as an associate member, and later as a full, active member designated as a fellow. He was recognized by the Academy as a member in good standing until November 30, 1959, when he was dropped, without notice or hearing, from the Academy's membership roster on the premise that he was employed in Lima, Ohio, and was no longer eligible for membership. Milkie petitioned for an order enjoining the Academy from removing his name from its membership roster, and to reinstate him as a fellow on the grounds that the Academy's action was arbitrary and capricious and was void for failure to follow the Academy's bylaws.

Three defenses were asserted by the Academy. The first was that the provisions of Section 1 of Article II of defendant's bylaws do not apply to termination of membership when the party resides and practices medicine on a full time basis outside Lucas County, Ohio. Section 1 of Article II, entitled "Investigative and Disciplinary Procedure," in part, provides, as follows:

"Sec. 1. Members—A member who is guilty of any act or conduct which violates any of the provisions of the Constitution and by-laws of the Academy or which is prejudicial to the reputation or welfare of the Academy or which constitutes unethical or unprofessional conduct as a physician, shall be liable to censure, suspension, expulsion or other disciplinary action."

Thereafter, an elaborate procedure is set forth providing for written charges to be made against a member by not less than five members of the Professional Relations

Committee, service of the charges against the accused, the scheduling of a prompt hearing with a fair and ample opportunity for the accused to be heard and present witnesses and arguments, a record of the hearing to be kept and transmittal of certified copies of the record to the Council of the Ohio State Medical Association. After action by the Board of Censors and the Council of the Academy, an appeal may be taken to the Ohio State Medical Association.

The second defense is to the jurisdiction of this court on the grounds that Milkie failed to exhaust an internal remedy, *e. g.*, appeal to the Ohio State Medical Association.

The third defense is that Milkie was estopped to assert his claim for relief because he reapplied for membership.

The reply maintained that the appeal procedure was not applicable to Milkie inasmuch as he was and still is a member in good standing of the Academy and was never expelled from membership in the manner prescribed by the constitution and bylaws as found in Section 1 of Article II, and, further, that he was tricked into reapplying.

The necessary facts for the decision of this court are not voluminous, although this cannot be said of the depositions and record.

The Academy is an Ohio nonprofit corporation county medical society. The requirements for membership in the Academy are set forth in Article III of the Constitution and are as follows:

"Every legally registered physician who is a citizen or who has made application for citizenship in the United States, residing *or* practicing in Lucas County, Ohio, * * *." (Emphasis ours.)

In August 1955, Milkie requested and was granted "on leave" status for the purpose of taking psychiatric training. He was thereafter carried on the bulletin published by the Academy as being on leave. After the expiration of three years of residency training, Milkie contends that

he began to fulfill the requirement of two years of experience by the American Board of Psychiatry and Neurology in Criminal Psychiatry by employment at Lima State Hospital for the Criminally Insane. The Academy asserts that Milkie transferred his practice and residency to Lima, Ohio, and, therefore, his membership in the Academy was properly terminated. It is not controverted that Milkie was in good standing and that he was not dropped from membership on the grounds of nonpayment of dues.

The Academy was first alerted to the fact that Milkie was at Lima State Hospital by a communication from the Ohio State Medical Association. Based on further investigation, the office staff made the following entry on the ledger sheet concerning Milkie's membership, "Dropped from membership. Employed in Lima, Ohio, 11-30-59." This entry was made in the handwriting of Miss Gallagher who is an Administrative Secretary of the Academy.

There is conflicting evidence as to whether Milkie did or did not reside or practice in Toledo or Lima, Ohio. However, it is the decision of this court that we are not required to determine the weight of conflicting evidence on this question. It is admitted that Milkie was dropped from membership by an administrative act, that he was not advised of this action until several months after the event, and then only incidentally to another inquiry; there was no notice, charges, hearing, or any semblance of due process.

The Academy maintains that during the history of the Academy, 107 of its members have been dropped in this manner and that, while there was no provision in the constitution or bylaws for this summary and automatic loss of membership, it is an internal administrative matter controlled by practice and not subject to judicial supervision. However, all prior actions had been taken without protest or objection. Milkie timely protested the Academy's action. The Academy makes some distinction between the use of the terms "expel" and "drop," but to Milkie, in the main, the effect was the same and he was, without oppor-

tunity to be heard, denied the privileges of membership in a professional organization in which admittedly he had been a member in good standing for 12 years.

Courts have approved in some cases automatic loss of membership, *e. g.*, for nonpayment of dues. In the instant case, however, the Academy's bylaws have clearly prescribed procedures, including notice, for expulsion for nonpayment of dues. Even so, where there may be procedures set forth for automatic termination of membership, courts do not favor expulsion without notice or hearing. See 20 A. L. R. 2d 540, as follows:

"It has been held in Alabama that although automatic cancelation of membership may be provided for because of nonpayment of dues or for other cause, such provision must be in the most unambiguous and explicit language, since expulsion normally requires a vote of the membership. The power to expel is ordinarily judicial in nature and hence requires judicial proceedings, and this principle is so far favored by the law as to cause the requirement of judicial proceedings to be implied in all cases of doubt. In determining whether the corporate regulations provide for automatic cancelation of membership for any cause, the rules of construction are against such cancelation, because of the importance of the rights involved, amounting in the case of explusion from an incorporated professional association to the forfeiture of a franchise and including in some instances the loss of office in the association. * * *"

On page 541 of 20 A. L. R. 2d, it is said:

"It was also held in that case that the provisions stated could not mean that the revision of the roll was to be made by the secretary, who is a mere recording officer, especially as such revision was the principal business of the meeting, and that it was not to be done automatically on the report of the treasurer, as he might be mistaken or negligent. It was further held that inasmuch as nonpayment of dues may be denied or some excuse may be presented therefor (matters requiring the judgment of the

society itself) expulsion therefor is normally only determinable by a vote of the membership. * * *''

See, also, 6 American Jurisprudence 2d 463, Section 35, which reads as follows:

"A rule or bylaw of an association, society, or club providing for the automatic suspension, without notice, of a member who fails to pay his dues or assessments is generally considered to be valid and enforceable by the organization. But this principle has been limited to situations where relevant facts are not disputed, and has been held not to be applicable where the facts are in dispute or the accused denies the charges, or where the penalty for an offense admitted by him is not automatic and fixed by the rules, since in the latter case the member has a right to present mitigating evidence and to state other facts which have a bearing on the punishment to be imposed. Nor does the principle apply where expulsion or suspension is not made automatic by the rules of the organization, but, rather, requires affirmative action by the organization."

See, also, *Medical and Surgical Society of Montgomery County* v. *Weatherly* (1883), 75 Ala. 248.

Chafee in 43 Harvard Law Review 993, The Internal Affairs of Associations Not for Profit, reaffirms that rules and proceedings must not be contrary to natural justice. See page 1015, as follows:

"(1) *Natural Justice.* This means, in the first place, that any gaps in the rules as to the procedure of the association or its tribunal should be filled by the adoption of fair methods, with a reasonable regard to the generally accepted main principles of parliamentary law. Thus in Dawkins' case* the club committee notified him of the charges against him and gave him an opportunity to defend himself in writing, although there was nothing in the rules to that effect."

This principal finds expression in Ohio Law. See 13 Ohio Jurisprudence 2d 481, Section 991, as follows:

---

*Dawkins* v. *Antrobus* (1881), 17 Ch. D. 615.

Section 991. "Where the articles of incorporation are silent as to the mode of proceeding to expel a member, the corporation is left to adopt its own mode. But it must adopt some mode which will secure to an accused member a trial upon reasonable notice, giving him opportunity to appear and defend the charges against him. Without some action on the part of the corporation, a member in good standing cannot, against his will, cease to be a member without having an opportunity to justify himself. Some proof forming the basis of the proceeding must be produced, and the member has a right to be present when the evidence is produced against him."

Penal regulations are strictly construed, especially when they are summary in nature and operate to produce a forfeiture of valuable rights. *Medical Society* v. *Weatherly, supra* (75 Ala. 248). Where the constitution, bylaws and rules are silent, the law writes into such articles an opportunity to be heard. *Musicians Protective Assn.* v. *Semon* (Tex. Civ. App.), 254 S. W. 2d 211; 6 American Jurisprudence 2d 464, Section 35. Under these conditions courts will not hesitate to interfere. 6 American Jurisprudence 2d 467, Section 37, reads as follows:

"* * * Nor will the courts hesitate to interfere where the proceedings have not been conducted in accordance with the organization's own rules of procedure, or have been carried on contrary to the principles of natural justice, as where the accused member is given no proper notice of the charges and hearing and no opportunity to appear and defend himself before the organization tribunal, or is denied a fair hearing or trial, or where the expulsion is voted maliciously or in bad faith and not actually for the cause designated in the charge brought against the member. * * *"

Where there has been a denial of due process and natural justice, the legal status of the member has not been changed. See *Rueb* v. *Rehder*, 24 N. M. 534, 174 P. 992, 1 A. L. R. 423; *Virgin* v. *American College of Surgeons*, 42 Ill. App. 2d 352, 192 N. E. 2d 414; and *Cheney* v.

*Ketcham,* 5 N. P. 139, 7 O. D. (N. P.) 183. We find in the instant case such a denial of due process and natural justice, and, therefore, must find that the legal status of Milkie has not been changed and he remains and is a member of the Academy.

There were no proceedings from which Milkie had to appeal, and, therefore, he was not required or could he appeal under the bylaws of the Academy or under the bylaws of the Ohio State Medical Association. Considering the facts of the case, we do not find merit in the defense of estoppel.

Judgment is hereby rendered for plaintiff, and the defendant is ordered to desist from excluding plaintiff from the rights of membership as a fellow in the Academy of Medicine of Toledo and Lucas County.

*Judgment accordingly.*

BROWN, P. J., and STRAUB, J., concur.