BADEAUX v. RYERSON.

1. CEMETERIES—DEED TO INDIANS—COMMON-LAW DEDICATION.
   Where a deed to the Ottawa tribe of Indians of án acre of land in the city of Muskegon "known and described as the Indian burying ground," failed to convey legal title because the grantees therein named were incapable of taking title, but by reason . thereof the said described premises were used as a cemetery, there resulted a common-law dedication for cemetery purposes, the fee remaining in the grantors.

2. DEDICATION—GRANT—DISTINCTION.
    A dedication may be distinguished from a grant in that
    there need be no grantee *in esse* at the time of the
    dedication, to give it effect.

3. SAME—NO PARTICULAR FORM NECESSARY—INTENT.
    No particular form or ceremony is necessary to the validity
    of a common-law dedication; and while ordinarily some
    written instrument is required to transmit a right of
    real property, the law applicable to dedication is different,
    and any way by which the intention of the dedicator can
    be evinced is sufficient.

4. SAME—EASEMENT.
    By a common-law dedication the fee does not pass, but only
    an easement.

5. CEMETERIES—EASEMENT—ABANDONMENT—REVERSION.
    Defendant, as the grantee by mesne conveyances of the
    original owner, is the owner in fee of the land subject to
    the easement in the public for cemetery purposes, and in
    the event of the abandonment of the easement the posses-
    sion and beneficial use of the land will revert to him.

Appeal from Ottawa; Cross (Orien S.), J. Sub-
mitted October 8, 1920. (Docket No. 58.) Decided
March 30, 1921.

Bill by William Badeaux and others against Martin
A. Ryerson to quiet title to land. Defendant filed a
cross-bill to have title quieted in him. From a decree
for defendant, plaintiffs appeal. Affirmed.

*Philip W. Kniskern,* for plaintiffs.

*Cross, Foote & Sessions,* for defendant.

STONE, J. This case is in this court upon the appeal
of the plaintiffs from a decree dismissing their bill of
complaint, and granting relief to the defendant upon
his cross-bill. The case was transferred from the
Muskegon to the Ottawa circuit. We compile from

the opinion of the circuit judge who heard the case the following statement of facts which we find to be supported by the evidence: The bill was filed to quiet the alleged title of the plaintiffs to an acre of land in the city of Muskegon. Issue was joined and proofs taken in open court. It appeared upon the hearing that Louis B. Badeaux, the father of two of the plaintiffs, and the grandfather of the other plaintiff, on the 27th day of April, 1841, was the owner in fee simple under patent from the United States Government of lot No. 2, section 19, town 10 north, range 16 west, in the district of lands subject to sale at Ionia, Michigan, containing 63.85 acres, according to the official plat of the survey of the said lands returned to the general land office by the surveyor general. On the day above named said Louis B. Badeaux and his wife made and executed a warranty deed in the usual form to the "Ottawa Tribe of Indians" of a parcel of land

"known and described as the Indian burying ground, being one square acre of land in a square form, situated on lot No. two, in section No. nineteen, town ten north, of range sixteen west, being in the town of Muskegon, Ottawa county, and State of Michigan."

After this deed was given, a number of Indians were buried upon this lot, and their bodies have never been removed; among others were a son and daughter of Louis B. Badeaux. Also other people have been buried upon this lot and their bodies have not been removed. About 1850 the Ottawa tribe of Indians moved away from the locality of Muskegon and established themselves elsewhere. In 1855, by virtue of a treaty with the Government, the Ottawa tribe of Indians was dissolved, since which time there has been no tribe of Ottawa Indians in that locality. Since 1841, the land in question has been at all times known and maintained as an Indian cemetery. For a number

of years there have been no burials there. The land is fenced and a large white cross stands upon the lot. No taxes have been assessed against the land since 1841, it having been treated as exempt by reason of its being a cemetery. The fence which now encloses the cemetery, and the cross, were erected by the father of the defendant. On February 26, 1853, said Louis B. Badeaux conveyed by quitclaim deed said lot No. 2 to George W. Walton and William Lasley, which title was later procured by the defendant. Later, and on March 31, 1856, said Louis B. Badeaux and wife conveyed said lot to Martin Ryerson and Robert W. Morris, which title was also later acquired by the defendant. The deed last named to Ryerson and Morris, after giving the description of lot No. 2, concludes as follows:

"Containing sixty-two (62) acres, be the same more or less, according to the United States survey of lands subject to entry in the district of Ionia, Michigan."

The plaintiffs claim that the Ottawa tribe of Indians could not take title to the lands, and that by reason of the possibility of reverter that attached when the land became a cemetery the land now belongs to the plaintiffs, subject only to the right of the public to use it as a cemetery.

The defendant also claims that the tribe could not take title to the land in question; and that the tribe merely had an easement to use the land for cemetery purposes, and that by reason of the several transfers the defendant owns the property subject only to the right of the public to use and maintain it for cemetery purposes.

The circuit judge, after alluding to the fact that it was admitted that the tribe could not take title to the land, held that the title did not pass from Louis B.

Badeaux by virtue of the deed to the tribe, and that if the title did not pass from him, then he still held the title to the land until he conveyed it by the later deeds. From the fact that the deed to the tribe refers to the land "as the Indian burying ground," and from other slight evidence in the record, it may be inferred that the land was being used as an Indian cemetery at the time the deed was given. The concluding part of the opinion of the circuit judge is as follows:

"The use that was being made of the land by the consent of the owner gave the public an easement to use the land as a cemetery. The public could surrender this easement at any time, but until so surrendered by the public, the land remained subject to the rights of the public to use and maintain it as a cemetery. This easement has not, as yet, been surrendered. A fence has been maintained around the land, a cross has been erected and maintained on the lot to designate it as sacred ground—a place where the dead have been buried. The fact that no bodies have been recently buried there does not signify that it has ceased to be a cemetery. It appears that the land in question is still maintained and regarded by the public as a cemetery, and has not been vacated and abandoned as such; that the easement for cemetery purposes has not been surrendered and that the land is yet subject to such easement. It follows from the foregoing conclusions that the title to the land in question did not revert to the plaintiffs, and that the plaintiffs have no right or interest in said lands, aside from the easement that the public may use it as a cemetery, but that the title passed to the defendant by the several transfers, and that the defendant now holds title to said lands, subject only to the right of the public to use and maintain the same as a cemetery. It therefore follows that the bill of complaint should be dismissed, and the relief asked for in the cross-bill of the defendant granted."

A decree was entered accordingly.

We have spent much time in the examination of the numerous authorities cited by counsel, and after such

research have been brought to the conclusion that the court below reached the correct conclusion in the case. If the premises of plaintiffs' counsel were to be conceded, and if it were to be held that the title, or a fee of any kind in the land, passed by the dedication, then the conclusion reached by counsel would be warranted by the authorities cited. But it is very clear to us that the dedication here was what is termed a common-law dedication; and we agree with counsel for plaintiffs in the force of the numerous citations from 18 Corpus Juris under the title of "Dedication"; that dedication may be distinguished from a grant, and that there need be no grantee *in esse* at the time of the dedication, to give it effect; that no particular form or ceremony is necessary to the validity of a common-law dedication; that while ordinarily some written instrument is required to transmit a right of real property, the law applicable to dedication is different, and no writing or conveyance is necessary to render a dedication effective; and that dedications have been established in every conceivable way by which the intention of the dedicator could be evinced. But we think it is equally well established by the authorities that by a common-law dedication the fee does not pass, but only an easement.

It seems to be conceded, and it is very clear to us, that, under the authorities, the deed from Louis B. Badeaux and wife to the Ottawa tribe of Indians conveyed no legal title, for the reason that there was no grantee capable of taking or holding the fee. The following cases are cited in support of that proposition: *Doe, dem. Sheldon,* v. *Ramsey,* 9 U. C. Q. B. 105; 1 Jones on the Law of Real Property, p. 205, citing *German Land Ass'n* v. *Scholler,* 10 Minn. 331, 338; *Jackson* v. *Cory,* 8 Johns. (N. Y.) 385; *Morris* v. *State,* 84 Ala. 457 (4 South. 628); *Tuttle* v. *Moore* (Ind. Terr.), 64 S. W. 585; *City of Lynn* v.

*Inhabitants of Nahant,* 113 Mass. 433; 22 Cyc. p. 127 and cases there cited.

The claim of the plaintiffs upon the main question in the case is shown by the following quotation from the brief of their counsel:

"All the text writers that treat of the matter, follow Touchstone, giving the rule that in the case of an abandonment of the land and (or) nonuse for the purpose for which it was dedicated, the land reverts to the donor or his heirs or representatives. In the meantime the fee remains in the donor, dormant, and so remains until the property is vacated and he has the right of possession. That a conveyance made to a stranger is void and passes no title. That there can be no title obtained by adverse possession or by any means whatever so long as the premises are occupied by those for whose benefit it was dedicated. In support of the above I cite the following cases: *Puffer* v. *Clark,* 202 Mich. 169, 199; *North* v. *Graham,* 235 Ill. 178 (85 N. E. 267, 18 L. R. A. [N. S.] 624); *First Universalist Society* v. *Boland,* 155 Mass. 171 (29 N. E. 524, 15 L. R. A. 231); *Estes* v. *Agricultural, etc., Ass'n,* 181 Mich. 71; *Delhi School Dist.* v. *Everett,* 52 Mich. 314; *Campbell* v. *City of Kansas,* 102 Mo. 326, (13 S. W. 897, 10 L. R. A. 593); *Hines* v. *State,* 126 Tenn. 1 (149 S. W. 1058, 42 L. R. A. [N. S.] 1138); *Colbert* v. *Shepherd,* 89 Va. 401 (16 S. E. 246),; *Thayer* v. *Magee,* 20 Mich. 195; *Upington* v. *Corrigan,* 151 N. Y. 143 (45 N. E. 359, 37 L. R. A. 794.)"

The cases cited above are readily distinguished from the instant case, and from any case involving a common-law dedication. In the *Puffer Case* there was a grant by deed of a conditional or qualified fee, with a provision for reverter. In the *North Case* there was a grant by deed creating a determinable fee. In the *Boland Case* there was a deed conveying a qualified or determinable fee. In the *Estes Case* there was a reversion, pursuant to a condition subsequent in the deed. In the *Delhi Case* there was a written lease held to be in perpetuity at the will of the lessee, conveying

a base or determinable fee. In the *Campbell Case* the action was ejectment and there was a dedication by plat. In the case of *Colbert* v. *Shepherd,* known as the "Mary Washington case," there was a common-law dedication. While an interesting case, it has no bearing upon the question here involved. It was held that the grave was not included in a subsequent deed. *Thayer* v. *Magee* was ejectment. There was a record-ed plat, held to convey a base, qualified or conditional fee. In the *Corrigan Case* the action was ejectment. There was a deed with a condition subsequent.

We are here dealing with a common-law dedication, and we think that in such a dedication the fee does not pass, but only an easement. 8 R. C. L. pp. 906, 907, citing *San Francisco* v. *Calderwood,* 31 Cal. 585 (91 Am. Dec. 542) ; *Tracy* v. *Bittle,* 213 Mo. 302 (112 S. W. 45, 15 Ann. Cas. 167) ; *Portland, etc., R. Co.* v. *City of Portland,* 14 Or. 188 (12 Pac. 265, 58 Am. Rep. 299) ; *Pomeroy* v. *Mills,* 5 Vt. 279 (23 Am. Dec. 207).

We invite attention to the case of *Tracy* v. *Bittle, supra.* It fully answers the claim of abandonment asserted by the plaintiffs. Referring to the distinction between a common-law dedication, and one created by deed, we quote the following at the close of the opinion:

"There is thus drawn a distinction between lands conveyed by deed for a valuable consideration, and lands merely dedicated to a public use. In the latter class of cases, if there comes a time when the bodies are all removed, or when by other conditions a clear abandonment of the graveyard is made apparent, then the right of the public, which is somewhat in the nature of an easement, ceases, and the land reverts to the original owner or his grantees. But mere ceasing to make further interments does not abandon the graveyard, as we have seen, so long as it is kept in condition to be known and is known as a burying ground. The defendant in this case has no right to

the possession of these grounds so long as they are kept and maintained as a burying ground. The public has the beneficial use thereof. The defendant has a reversionary interest. He holds the fee subject to the use aforesaid."

In *Pomeroy* v. *Mills, supra,* we quote from the headnote:

"But the public, by such dedication and subsequent use, only acquire an easement upon the land, and not an interest in the soil itself; and any proprietor of an undivided share of land in the town, may maintain ejectment against any one who is in the exclusive possession of any part of the land, so set apart, and recover, subject to such easement."

In the *San Francisco Case* it was held that an easement is not an estate in land, and the court said:

"The public took nothing but an easement, and that term excludes the idea of an estate in the land on which the servitude was imposed."

Applying these rules to the instant case, it seems clear that, upon abandonment of this cemetery, the land will revert to the defendant, as the grantee, by mesne conveyances, of the original owner. From this conclusion there seems to be no escape. It follows that the defendant is the owner of the fee of this land, but the public has the right to use the land for cemetery purposes, and in the event of abandonment the possession and beneficial use of the land will revert to the defendant.

It is the claim of the defendant, and there is evidence in the record to that effect, that he has offered to convey this land to the city of Muskegon, in perpetuation, as an Indian cemetery, but that owing to the conflict in the title such offer was refused. We have examined and considered all of the questions involved, and are of opinion that the court below was warranted in dismissing plaintiffs' bill and in granting defendant

the relief prayed for in his cross-bill; and the decree will stand affirmed, with costs to defendant.

STEERE, C. J., and MOORE, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.

The late Justice BROOKE took no part in this decision.