# STATE OF MICHIGAN

# COURT OF APPEALS

DASCH, INC., d/b/a PEGASUS GROUP, DDJ-BIRMINGHAM, L.L.C., GATEWAY-ROCHESTER, L.L.C., DAILEY-ROCHESTER, L.L.C., and PG 4301 STERLING HEIGHTS, L.L.C.,

        Plaintiffs-Appellants,

v

SIGNATURE ASSOCIATES, INC., BRUCE MORRISON, CUSHMAN & WAKEFIELD, INC., and JOHN DOE CORPORATION,

        Defendants-Appellees.

UNPUBLISHED
August 25, 2015

No. 321147
Oakland Circuit Court
LC No. 2012-126590-NZ

Before: RONAYNE KRAUSE, P.J., and GLEICHER and STEPHENS, JJ.

PER CURIAM.

Plaintiffs appeal as of right the trial court's judgment of no cause of action, entered after a bench trial, in this case in which plaintiffs alleged that defendants committed negligent misrepresentation during the course of a real estate transaction that resulted in a financial loss for plaintiffs. We affirm.

## I. BACKGROUND

Plaintiff Dasch, Inc., d/b/a Pegasus Group, a California-based real estate investment company, contacted defendant Signature Associates, Inc., a brokerage company in the Detroit area, regarding office buildings in Rochester, Birmingham, and Sterling Heights, Michigan, offered for sale on a sale/leaseback basis and brokered by Signature. Signature provided information on the properties, and Dasch, via its Director of Acquisitions, Phil Jones, offered to purchase the buildings for $22,700,000.

Subsequently, Jones requested that defendants furnish some rent comparables so that Jones and Robert Dailey, Dasch's co-president, could confirm that the market would support rental rates similar to those paid by the buildings' sole tenant, Century 21, if Century 21 defaulted on its leases for the office buildings. Defendants sent a comps list to Jones; however, the list had been prepared several months earlier for another client. David Green, a real estate salesperson for Signature, compiled the comps list from various sources.

-1-

Dailey and Jones sought to verify the information in the comps list. Jones stated that he spoke with Green by telephone and requested Green's opinion regarding market rents for buildings comparable to the office buildings. Jones testified that Green told him that market rents for buildings in Birmingham and Rochester were $30 NNN and were $20 NNN for Sterling Heights.[1] Green testified that he had no recollection of speaking with Jones, and asserted that he would not opine on market rents for properties in Birmingham, Rochester, or Sterling Heights without performing an analysis of those areas. Dailey traveled to Michigan and toured the office buildings with Bruce Morrison, the Director of Signature's Investment Sales Division. Dailey observed the areas in which the buildings were located and saw similar properties. Jones performed an analysis of the financial terms of the proposed transaction and concluded that even if market rental rates were 40 percent below the lease rates, Dasch could still realize a return of 7.5 percent.

Plaintiffs entered into a purchase agreement for the properties.[2] The total purchase price for all the properties was $19,698,400. The limited liability purchasing companies then entered into new lease agreements with Century 21. Century 21 began defaulting under the terms of the leases and eventually declared bankruptcy. Plaintiffs disposed of the office buildings at a total loss of $14,005,900.

Plaintiffs filed suit alleging fraud and misrepresentation (Count I) and negligent misrepresentation (Count II). In Count I, plaintiffs alleged that defendants misrepresented market rental rates by falsely stating the rent paid by tenants in comparable buildings, and using dated and inaccurate comparable rents when accurate and current comparable rents were available. In Count II, plaintiffs alleged that defendants created a "special relationship" with plaintiffs and it was foreseeable that plaintiffs would rely on the information defendants gave them without retaining another broker. Plaintiffs argued in the alternative that defendants' actions "created an exception to the general rule limiting the duty owed by a seller's agent to a prospective buyer." Plaintiffs alleged that defendants violated their duties of care by falsely stating the levels of rent paid by tenants in comparable buildings, falsely stating that tenants were paying higher rents for lesser buildings, misrepresenting that retail rents were comparable to the office buildings, and using inaccurate and dated rent comparables when accurate and current information was available.

The trial court entered a verdict of no cause of action against plaintiffs. In reaching its verdict, the court found that the comparable lists were factually inaccurate and incomplete. In addition, it noted that of the 55 properties on the comps list, many were retail rather than commercial properties, few of the properties were in Rochester, and no properties were in Sterling Heights. However, the court viewed the comps list as "merely a starting point and not a detailed comp report that any reasonable investor would rely on to make investment decisions."

---

[1] "NNN" or "Triple Net" is a commercial real estate term of art for a lease under which the tenant pays taxes, utilities, and maintenance separately and not as part of the rent.

[2] Dasch assigned its right to purchase the properties to the plaintiff limited liability companies, which were formed for the purpose of purchasing the buildings.

The court stated that Green's representation that market rent rates for similar properties were $30.00 NNN for Birmingham and Rochester properties, and $20.00 NNN for Sterling Heights properties, were "ballpark figures" on which no reasonable investor would base a decision. The court also observed that experts for the parties and the trial court testified that lease values in 2007 were "materially less" than the figures quoted by Green. The court noted that its independent expert, Michael Cotter, valued the 2007 lease rates at $24.75 NNN for Birmingham, $17.00 NNN for Rochester, and $13.00 NNN for Sterling Heights. The trial court adopted those figures.

The court held that Morrison's e-mail to Jones in which Morrison gave an opinion of market rates for the properties, the comps list, the Green-Jones telephone call, and the Morrison-Dailey property tour could not serve as the basis for a misrepresentation claim because they were based on opinion or created an issue of fact. The trial court found that defendants made a material representation by giving plaintiffs a comps list that had in fact been prepared for another potential purchaser. The representation was false because the comps list contained several errors. However, the trial court found that plaintiffs did not establish that defendants knew or should have known that errors existed in the report when it was given to plaintiffs. In addition, the trial court found no evidentiary support for plaintiffs' allegation that defendants made the representation with the intent that plaintiffs rely on it. The trial court observed that the undisputed evidence showed that plaintiffs purchased the office buildings and incurred damages, but the court concluded that plaintiffs did not rely on the comps list to make the decision to purchase the office buildings. The trial court stated that, "Dailey's and Jones' testimony supports the notion that Plaintiffs had more questions than answers as a result of the list." The trial court stated that because the comps list was "incomplete, questionable, [and] suspicious[,]" any reliance on it would have been unreasonable. Accordingly, the trial court found no cause of action on plaintiffs' claim of fraudulent misrepresentation.

Regarding plaintiffs' claim of negligent misrepresentation, the trial court noted that plaintiffs' witnesses acknowledged "that they needed more information and analysis of the market rental rates than the list provided." The trial court found that plaintiffs' established that defendants "prepared the list without reasonable care[,]" but that plaintiffs did not establish that defendants owed it a duty of due care because no evidence showed that defendants learned of the errors in the comps list before plaintiffs discovered them. The trial court found no cause of action on plaintiffs' claim of negligent misrepresentation.

## II. NEGLIGENT REPRESENTATION

On appeal, plaintiffs argue that the trial court erred in finding no cause of action on their claim of negligent misrepresentation. We disagree. We review for clear error a trial court's findings of fact in a bench trial, and review de novo a trial court's conclusions of law. *Redmond v Van Buren Co*, 293 Mich App 344, 352; 819 NW2d 912 (2011).

"A claim for negligent misrepresentation requires [a] plaintiff to prove that a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Unibar Maintenance Servs, Inc v Saigh*, 283 Mich App 609, 621; 769 NW2d 911 (2009) (citations and quotation marks omitted). "There can be no

fraud where a person has the means to determine that a representation is not true." *Nieves v Bell Industries, Inc*, 204 Mich App 459, 464; 517 NW2d 235 (1994).

Plaintiffs allege defendants made misrepresentations either verbally or in writing in the following four instances: 1) Morrision's e-mail to Jones; 2) the Century 21 comps list; 3) the phone call between Green and Jones; and 4) the property tour. Plaintiffs assert that in each instance defendants materially overstated the comparable rents for each of the markets where the properties were located.

Plaintiffs rely on this Court's decision in *Alfieri v Bertorelli*, 295 Mich App 189; 813 NW2d 772 (2012), in support of their assertion that defendants owed them a duty of due care because they voiced a particularized concern regarding market rents. In *Alfieri*, the plaintiffs purchased a condominium built in what had been an abandoned factory. The site had been contaminated with chemicals, and while a vapor barrier was installed when the condominiums were built, the site was not actually decontaminated. The plaintiffs believed that the site had been decontaminated; their belief was based on a newspaper article and a sales brochure, both of which stated that decontamination had taken place. The plaintiffs discovered that the site was in fact contaminated and filed suit, alleging, among other counts negligent misrepresentation. A jury found the defendants liable for negligent representation, but found the plaintiffs to be 35 percent comparatively negligent. *Id*. at 191-192.

This Court observed that negligent misrepresentation requires the defendant to owe a duty to the plaintiff. This Court noted that while "Michigan jurisprudence had never imposed on sellers' agents a duty per se of disclosure to buyers," such a duty "may be imposed on a seller's agent to disclose newly acquired information that is recognized by the agent as rendering a prior affirmative statement untrue or misleading." *Alfieri*, 295 Mich App at 194. This Court found that a genuine issue of fact existed with regard to whether the defendants owed a duty to the plaintiffs because evidence in the record showed that the plaintiffs had relied in part on information in the brochure, that the plaintiffs had directly inquired about the condition of the property, that the Department of Environmental Quality had informed the defendants that the brochure contained inaccurate information, and that the defendants had not disclosed the updated information to the plaintiffs. *Alfieri*, 295 Mich App at 194.

In this case, the trial court found that while defendants prepared the comps list without reasonable care, any statements verbally or in writing to plaintiffs were only opinions and not reliable. Plaintiffs assert that the trial court erred in finding that defendants did not owe them a duty of due care because no evidence showed that defendants learned of the errors in the comps list before plaintiffs informed defendants of the errors years after the sale was finalized. Essentially, plaintiffs argue that they were not required to establish that defendants learned that the information in the comps list was false before they themselves made that discovery. Plaintiffs' argument is mistaken as to the law. As stated in *Alfieri*, a seller's agent must disclose newly discovered information that the seller's agent recognizes "as rendering a prior affirmative statement untrue or misleading." *Id*. at 194. This duty may arise if a buyer expresses a particularized concern about a particular issue. *Id*. Here, is it undisputed that plaintiffs repeatedly expressed concern about market rental rates and that plaintiffs wanted this information in order to determine whether the purchase of the office buildings would continue to be a profitable enterprise if Century 21 breached the leases under which it occupied the

-4-

buildings. However, *Alferi* held that even under these circumstances, the duty to disclose attaches only where the seller's agent discovers the error prior to the purchaser becoming aware of the error. The trial court made a fact-finding that plaintiffs failed to prove that defendants knew that the statements defendants made orally or in the comps list were untrue or that defendants discovered that the statements were untrue before plaintiffs made the discovery. This fact-finding was not clearly erroneous. Accordingly, the trial court did not err in concluding that plaintiffs did not establish that defendants owed them a duty of due care. *Id.* at 194.

In addition, and regardless of whether defendants could be found to have owed plaintiffs a duty of care, the trial court did not clearly err in finding that any reliance by plaintiffs on the comps list was not justifiable. The purchasers, exercising reasonable care, should have noted some of the glaring problems with the comp list. Plaintiffs cannot establish negligent misrepresentation when plaintiffs "were either presented with the information and chose to ignore it or had some other indication that further inquiry was needed." *Id*. at 195. Dailey traveled to Michigan to tour the office buildings and to see the surrounding area. Jones did an analysis of the proposed transaction and concluded that the transaction would be viable even if market rental rates were 40 percent below Century 21's lease rates. This evidence supports the trial court's finding that plaintiffs knew that the comps list raised questions and could not be taken at face value.

For these reasons, the trial court did not err in concluding that plaintiffs failed to establish that defendants were liable for negligent misrepresentation.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Elizabeth L. Gleicher
/s/ Cynthia Diane Stephens