# STATE OF MICHIGAN

# COURT OF APPEALS

3D IMAGING SERVICES, LLC,

      Plaintiff-Appellant,

v

MCLAREN, INC.,

      Defendant-Appellee.

UNPUBLISHED
August 8, 2017

No. 333100
Shiawassee Circuit Court
LC No. 15-007537-AV

Before: CAVANAGH, P.J., and METER and M. J. KELLY, JJ.

PER CURIAM.

Following a bench trial, the district court held that defendant breached the parties' contract and awarded plaintiff the balance owed, as well as attorney fees and costs. The circuit court vacated that judgment, and remanded for entry of judgment in defendant's favor. Plaintiff appeals by leave granted.[1] We reverse the circuit court and remand this matter for further proceedings consistent with this opinion.

Plaintiff surveys existing facilities and creates digital images for the purpose of renovating, retrofitting, or redesigning the structures. After surveying the property, plaintiff takes the data collected and creates a computer file that offers a three-dimensional (3D) model of the building with the information embedded in the model. The file is provided to the client in an AutoCAD file. AutoCAD is a design software program that allows the user to manipulate the models as needed.

In January 2014, defendant responded to an e-mail solicitation from Vaughn Mantor, an employee in plaintiff's sales department. Defendant needed an AutoCAD drawing for two motel buildings and a cabin. The parties executed a contract under which plaintiff would perform "3D laser scanning" operations on the site of the project to "capture full existing conditions of architecture, capturing accurate point cloud data on the walls, floors, ceiling, ramps, columns,

---

[1] *3D Imaging Servs, LLC v McLaren, Inc*, unpublished order of the Court of Appeals, entered September 21, 2016 (Docket No. 333100).

stairs, elevators, doorways[,] above ceiling MEP[2] components." Among the provisions was the following:

> 2. **AutoCAD Point-Cloud Modeling:** We understand to provide a team to download and register all individual scans collected by the on-site laser scanning crew. Once the point-cloud has been registered, the point-cloud data will represent one three-dimensional environment. After the completion of registration, [plaintiff] will provide a BIM team to create the architectural and structural model in AutoCAD (2010) of the motel buildings. The LOD 100 AutoCAD model will be generated from the registered point-cloud data in AutoCAD, representing one, accurate model of existing conditions. The **model** will be delivered in AutoCAD 2010. (Emphasis added.)

The total contract price was $2,225. Defendant paid $445 as retainer, leaving a balance of $1,780. Plaintiff delivered the model to defendant by e-mail in a .dwg[3] AutoCAD file, and attached an invoice for the contract balance of $1,780. When defendant's president opened the file, however, he was unable to manipulate the model for his purposes. He informed plaintiff that he needed a two-dimensional (2D) model. When the parties were unable to resolve the issue, defendant refused to pay the balance on the contract.

Plaintiff filed a complaint in the district court alleging breach of contract and seeking the balance due on the contract. Defendant filed a counterclaim alleging that plaintiff breached the contract and that defendant was entitled to a refund. At the bench trial defendant's president testified that, after reviewing the solicitation e-mail, he informed Mantor that he needed the finished product in a 2D format and Mantor assured him that he would get that, and 3D as a bonus. Defendant's president further testified that the product he received from plaintiff was like a "Google Earth picture of a building." Although he could turn the model and look at it from various angles, he was unable to manipulate it as needed.

Mantor testified that plaintiff agreed to provide the model in a 3D format. He did not recall whether defendant specifically requested the model in a 2D format, but was aware that the model provided by plaintiff could be viewed in a 2D format. Plaintiff's project manager, Jason Boldt, testified that he personally performed the 3D laser scanning of the buildings and created the 3D model. He also explained that, although the product was provided in a 3D format, it could be viewed in a 2D format. Boldt had an exact copy of the .dwg file delivered to defendant on his computer and he demonstrated to the district court how the file could be viewed in a 2D format. He explained that, depending on the user, there are "probably ten different ways to turn a 3D model into a 2D drawing" and it only takes a couple of minutes.

Defendant's president maintained that the contract provided for a "model," and that to him a "model" is a "two dimensional" image. In rebuttal, plaintiff's project director, Michael James, testified that defendant's understanding of the term "model" was inaccurate. He stated

---

[2] "MEP" is the acronym for "mechanical, electric, and plumbing."

[3] According to the evidence, a .dwg file is a drawing file used primarily for AutoCAD software.

that in the industry, the definition of "model" is "a three-dimensional representation of a structure or object."

The district court noted that the parties agreed there was a binding contract, and characterized the contract as a "pretty straight forward" contract for 3D laser scanning. The court concluded from the testimony that the "right person" could take the file that was in a 3D format and convert it to a 2D format. And "when you go to a 3D Imaging company that brags and advertises they do 3D imaging, that's what you're going to get." Accordingly, the district court held that plaintiff properly performed under the contract and was entitled to the balance due of $1,780, as well as $2,000 in attorney fees and costs.

On appeal, the circuit court reversed, concluding that the contract was ambiguous and there was no meeting of the minds because the contract was silent regarding whether the "model" provided would be in a 2D or 3D format.[4] The circuit court vacated the district court's judgment and remanded the case for entry of judgment in the amount of $455 in defendant's favor. This appeal followed.

Plaintiff argues that the circuit court erred in holding that the contract was ambiguous because the language was clear as a matter of law and because defendant did not raise the issue of ambiguity below. We agree, in part.

A trial court's findings of fact after a bench trial are reviewed for clear error while its conclusions of law are reviewed de novo. *Redmond v Van Buren Co*, 293 Mich App 344, 352; 819 NW2d 912 (2011); see also MCR 2.613(C). Questions of contract interpretation are also reviewed de novo. *Coates v Bastian Bros, Inc*, 276 Mich App 498, 503; 741 NW2d 539 (2007). "[A]n appellate court should not conduct an independent review of credibility determinations, disregard findings of fact, or create new findings of fact." *Smith v Anonymous Joint Enterprise*, 487 Mich 102, 113; 793 NW2d 533 (2010).

We first reject plaintiff's argument that defendant did not raise the issue of ambiguity below. Defendant argued before the district court that it understood that plaintiff was providing a 2D model, not a 3D model. Defendant's president testified that the contract provided for a "model" and that, to him, "model" meant "two dimensional." However, James testified that defendant's understanding of the term "model" was inaccurate, contending that in the industry a "model" was understood to be "a three-dimensional representation of a structure or object." Although defendant did not specifically argue that the contract was ambiguous, the parties' arguments regarding the meaning of the word "model" in the contract essentially constituted an ambiguity argument.

Next, we consider de novo whether the contract was ambiguous because of its use of the word "model." See *DaimlerChrysler Corp v G-Tech Prof Staffing, Inc*, 260 Mich App 183, 184-185; 678 NW2d 647 (2003). It is well-established that unambiguous contractual language must

---

[4] The circuit court noted that the contract stated that the "three-dimensional laser scanning would be used to create point-cloud data which would be turned into a *model*." (Emphasis added.)

be enforced as written because it reflects the parties' intent as a matter of law. *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). A contract is considered ambiguous when the words may be reasonably understood in different ways. *Raska v Farm Bureau Mut Ins Co of Mich*, 412 Mich 355, 362; 314 NW2d 440 (1982). "If a contract, however inartfully worded or clumsily arranged, fairly admits of but one interpretation, it may not be said to be ambiguous." *Hellebuyck v Farm Bureau Gen Ins Co of Mich*, 262 Mich App 250, 254; 685 NW2d 684 (2004). That is, courts may not create ambiguity where the terms of the contract are clear. *Frankenmuth Mut Ins Co v Masters*, 460 Mich 105, 111; 595 NW2d 832 (1999).

In this case, the circuit court held that the contract was ambiguous because it did not specify whether the "model" provided would be in a 2D or 3D format and, thus, there could be no meeting of the minds "if somebody has to read two or three sentences [in the contract] together to discern what kind of product they're going to get."

In matters of contract interpretation, a "court must look at the contract as a whole and give meaning to all terms." *Auto-Owners Ins Co v Churchman*, 440 Mich 560, 566; 489 NW2d 431 (1992). And, here, an examination of the entire contract does not support the circuit court's conclusion that the term "model" was susceptible to any other meaning than a 3D model. There is no mention of a 2D model anywhere in the contract. The project overview section of the contract states that the service to be provided to defendant was 3D laser scanning and modeling for the motel and cabin. In the next paragraph, outlining plaintiff's commitment to the work it performs, plaintiff stated: "In short, we understand the complexity and uncertainty associated with both laser scanning and *3D modeling*." (Emphasis added.) In detailing the scope of work, the contract stated that plaintiff would perform 3D laser scanning, and that the on-point cloud data collected would be downloaded and registered by the on-site laser scanning crew. The contract also stated that, after registration, the "on-point cloud data will represent one *three-dimensional environment*." (Emphasis added.) Therefore, as the district court held, a thorough reading of the contract "fairly admits of but one interpretation,"[5] that the term "model" as used in the contract meant a 3D model. Accordingly, the circuit court erred in holding that the parties' contract was ambiguous and, thus, unenforceable.

Next, plaintiff argues that the district court properly concluded that defendant breached the contract; therefore, the circuit court's decision must be reversed. We agree.

"A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014).

In this case, applying the plain language of the contract, plaintiff was required to perform 3D laser scanning of defendant's structures so as to capture "full existing conditions of architecture, capturing accurate point cloud data on the walls, floors, ceiling, ramps, columns, stairs, elevators, doorways and above ceiling MEP components." See *Old Kent Bank v Sobczak*,

---

[5] *Hellebuyck*, 262 Mich App at 254.

243 Mich App 57, 63; 620 NW2d 663 (2000). The contract also provided that, on completion of the scanning operations the data would be used to create a 3D environment or CAD model for AutoCAD 2010 which would then be delivered to defendant.

There is no dispute that plaintiff performed the 3D laser scanning and delivered the file to defendant via e-mail in a .dwg AutoCAD file. Defendant's only claim is that plaintiff breached the contract by not providing the model in a 2D format. But as explained above, the unambiguous contract contained no such provision. Moreover, there was ample testimony that the file that was delivered to defendant could be viewed both in 3D and 2D formats—as demonstrated to the district court. Therefore, we agree with the district court that plaintiff established by a preponderance of evidence that defendant breached the subject contract; accordingly, the circuit court's decision must be reversed. See *Miller-Davis Co*, 495 Mich at 178.

Plaintiff also contends that, under the terms of the parties' contract, it is entitled to attorney fees and costs incurred for its collection efforts, including the proceedings on appeal. The district court did award plaintiff $2,000 for attorney fees and costs pursuant to the contract. But the circuit court did not consider the issue of plaintiff's entitlement to attorney fees and costs, particularly with regard to the additional fees and costs related to the appeal actions. Therefore, we remand the matter to the circuit court for determination of this issue.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiff is entitled to costs as the prevailing party. MCR 7.219(A).

/s/ Mark J. Cavanagh
/s/ Patrick M. Meter
/s/ Michael J. Kelly