*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARK A. BROWN TRUST, by Trustee MARK A.
BROWN,

        Plaintiff-Appellant/Cross-Appellee,

v

WILLIAM T. KUSSY, JR.,

        Defendant-Appellee/Cross-Appellant,

and

JOHN DOE, JANE DOE, and ALCONA COUNTY
ROAD COMMISSION,

        Defendants,

and

DEBRA A. GRAY, DEBORAH LYNN MCAVOY,
CATHERINE MARY WEBSTER, NELLIE JEAN
GRIMWADE, LUELLA M. SMITH, DIANNA L.
WNUK, DAVID V. GRAHAM, SUSAN K.
GRAHAM, ROY L. GRAHAM, R. KEITH
GRAHAM, JANET S. SMITH, JUDITH E.
PHILLIPS, THOMAS M. NORGIEL, SCOTT
MELANCON, ROBERT L. MELANCON, JAMES
F. HANNA, CHARLES E. HANNA, MARLENE K.
HANNA, DALE A. BROCKWAY, NANCY J.
BROCKWAY, ROBERT REID, TANIA REID,
THOMAS W. KNAUS, IRENE KNAUS, KEVIN
HEIKKINEN, JACQUELINE HEIKKINEN,
WILLIAM A. ENOCH, SANDRA M. ENOCH,
MILAN T. STASA, STEVEN R. WILKES,
PATRICE S. WILKES, HELEN J. FISHER, PHILIP
J. FISHER, CLIFTON GURKIN, DEBIE GURKIN,

UNPUBLISHED
May 21, 2020

No. 347996
Alcona Circuit Court
LC No. 15-002489-CH

-1-

MICHAEL TENHARMSEL, LYNN
TENHARMSEL, and DAN KELTERBORN,

        Intervening Defendants.

_____

Before: SWARTZLE, P.J., and GLEICHER and M. J. KELLY, JJ.

PER CURIAM.

The Mark A. Brown Trust and William Kussy both own homes in the Backus Beach subdivision located on Hubbard Lake. Brown owns a lot facing the lake, but separated from the water by Lake Street and a privately dedicated "park"; Kussy owns a back lot. Kussy erected and maintains a dock in the water across from Brown's home. Brown filed suit, claiming exclusive riparian rights to the bottomlands of Hubbard Lake. Kussy defended that he enjoyed the right to erect and maintain a dock under the park dedication. The trial court determined that Brown did have riparian rights, but the scope of the dedication permitted Kussy's dock use. Both parties appeal, and we affirm.

## I. BACKGROUND

Backus Beach subdivision is named after a historical landowner in the area. In 1922, Austin Backus transferred a parcel of land along Hubbard Lake to Mark Brown's predecessor in interest, with a deed that granted the transferee "a right of way and free access of the land between the property above conveyed and Hubbard Lake." In 1935, Hawes Township Supervisor Varnum McConnell created the Supervisor's Plat of Backus Beach, which included the property that would later belong to Brown. McConnell named the strip of land along the shoreline as a "park," and dedicated it "for use of lot owners in common." Separating the lake and park from the first row of houses in the subdivision is Lake Street.

Brown has owned a home on Lake Street since 1999[1]; Kussy has owned a lot farther back in the subdivision since 1989,[2] and he subsequently bought two additional back lots, one of which he rents out. Record evidence demonstrates that owners within the subdivision have maintained removable seasonal docks and moored boats from the park shoreline for several decades. In his deposition, Kussy admitted that the number of docks "has increased, maybe dramatically" over the years and it had "become an issue." When Kussy purchased his rental property in 1997, there was already a seasonal dock belonging to his predecessor in interest from the shoreline in the park directly in front of Brown's property, which is now used by the visitors to Kussy's rental home.

_____

[1] Brown's parents owned the property from 1968 through 1999.

[2] Kussy's grandparents owned the property from 1977 through 1989.

-2-

Brown filed suit in 2016, seeking a declaratory judgment that his property "enjoy[s] exclusive riparian ownership and privileges to the bottomlands of Hubbard Lake."[3] As a littoral owner, Brown asserted that he had a right to construct a dock along the shoreline. However, Brown contended that the scope of the park dedication did not give backlot owners the right to erect and maintain seasonal docks.[4] Kussy countered that Brown did not have littoral rights because Brown's lot did not touch the water's edge and that, regardless of who held littoral rights, the scope of the park's dedication allowed backlot owners to maintain a dock and moor a boat.

The procedural history of this case is somewhat complicated. Essentially, the court determined Brown's property rights in December 2016, and later determined the scope of the park dedication in February 2019. The court found that Brown had littoral rights connected with his property as follows:

> It is an established matter of law that littoral rights cannot be severed from adjacent upland. In the instant case Plaintiff Brown's property would run to the water's edge but for the public dedication of Lake Street and the private dedication of the Park. The public dedication of the [sic] Lake Street conveys what has long been referred to as a "base fee." . . . The public authority that accepts the dedication on behalf of the public has no title or interest in the property dedicated . . . . It is the adjacent land owner who holds the reversionary interest and becomes the fee simple absolute holder if the dedication fails or is abandoned. . . .

The only way to sever the littoral rights of an adjacent upland, the court ruled, is to grant fee title to another of the land between the upland and the water's edge. "Lands separated from the water only by lands dedicated to public use or use of lot owners within a plat continues to possess littoral rights so long as the abutting land owner owns the entire width of the reversionary fee . . . ." Accordingly, the trial court concluded, Brown "does in fact have a reversionary interest in Lake Street and the Park and therefore does have littoral rights."

Despite Brown's rights, the court later determined that the scope of the park dedication included the use by backlot owners of seasonal docks and the right to moor boats along the park shoreline. The court first noted that private dedications of land are valid and enforceable and enhance the value of the beneficiary lots. Such private dedications are irrevocable easements.

The trial court then found that the language of the park dedication was latently ambiguous. To resolve the ambiguity, the court was required to "look[] at the circumstances that existed at the time of the dedication" to "shed light on the intent of the grantor." The court considered historical evidence presented by Kussy that backlot owners had maintained docks and moored boats off the park shore since the dedication. The court acknowledged Brown's challenge to the admissibility

---

[3] "Strictly speaking, land which includes or abuts a river is defined as riparian, while land which includes or abuts a lake is defined as littoral." *Thies v Howland*, 424 Mich 282, 288 n 2; 380 NW2d 463 (1985). We will use the proper term "littoral" whenever possible in this opinion.

[4] Brown further sought to prevent backlot owners from using the park for beach-like purposes like sunbathing and picnicking, but has since abandoned that issue.

of this evidence, but found that his concerns affected only the weight of the evidence. The court ultimately ruled:

> It is clear from the proofs that when the plat was created and the public dedication of Elizabeth Street [which runs perpendicular to Lake Street and ends at the shore adjacent to Brown's lot] and the private dedication of the park was made, there were already some docks and boats on the shoreline along the park. Very quickly lots were being sold referencing the plat and those purchasers had the right to rely on the plat. Over [70] years passed before any complaint was made or any claim of exclusive littoral rights in the park were made. By that time, it had become the customary use of the park by all lot owners of Backus Beach to keep boats and docks along the park. That custom, which had clearly already started at the time of the dedication was made, and the passage of time created an irrevocable easement for the lot owners in the dedicated park land and estops [Brown] from now claiming exclusive littoral rights. [Kussy's] proposed use does not unreasonably interfere with [Brown's] use and enjoyment of his property. [Brown] is estopped from claiming any exclusive littoral rights. The scope of the dedication, by the creation of an irrevocable easement establishes littoral rights in all lot owners and allows docks, hoists, and boats to remain in the water.

Brown now appeals, contending that the park dedication was plain and unambiguous, and even if it was ambiguous, did not permit backlot owners to maintain docks and moor boats. Kussy cross-appeals challenging the court's finding that Brown had "exclusive riparian or littoral rights."

## II. STANDARDS OF REVIEW

"The extent of a party's rights under an easement is a question of fact, and a trial court's determination of those facts is reviewed for clear error." *Blackhawk Dev Corp v Dexter*, 473 Mich 33, 40; 700 NW2d 364 (2005). Similarly, we review for clear error the trial court's decision on the scope of a plat dedication. See *Higgins Lake Prop Owners Ass'n v Gerrish Twp*, 255 Mich App 83, 92; 662 NW2d 387 (2003). Clear error exists when, "after a review of the record, this Court is left with a definite and firm conviction that a mistake was made." *Lawrence v Burdi*, 314 Mich App 203, 220; 886 NW2d 748 (2016). We review de novo the trial court's conclusions of law. *Redmond v Van Buren Co*, 293 Mich App 344, 352; 819 NW2d 912 (2011).

## III. SCOPE OF DEDICATION

Brown contends that the trial court erred in finding the language of the dedication ambiguous. As with contracts, the text of a dedication document must be examined and, if plain and unambiguous, enforced as written. *Little v Kin*, 468 Mich 699, 700; 664 NW2d 749 (2003). On the other hand, if the language is ambiguous, the trial court may consider extrinsic evidence to determine the dedication's scope. *Id*.

The dedication provided that the park was "for use of lot owners in common." Nothing in the dedication defines the term "use" or clarifies its meaning. There is no way to tell from the dedication language alone what "use" is permitted—may lot owners sunbathe, swim, and picnic; may they maintain a dock or moor a boat; may they simply cross the park for ingress and egress

of the water?  Compare *Dyball v Lennox*, 260 Mich App 698, 699-700; 680 NW2d 552 (2004) (in which the dedication clearly stated, "The Easterly 16 feet of the above-described premises being reserved for the use of those parties, their heirs, assigns, and successors, owning lots in Cranewood No. 1 Subdivision . . . for the purpose of ingress and egress to and from the premises in which they may have an interest to the water's edge of Lake Fenton").  Given the minimalistic and unexplained language of the dedication, we cannot find error in the trial court's determination that further evidence of its meaning was required.

So what does this dedication entail?  "A 'dedication' of land is an 'appropriation of land to some public use, accepted for such use by or in behalf of the public.' "  *Baum Family Trust v Babel*, 488 Mich 136, 144; 793 NW2d 633 (2010) (citation omitted).  Dedications may be either public or private.  *Redmond*, 293 Mich App at 352.  For private dedications in a recorded plat that occurred between 1835 and 1966, the grantees have " 'at least an irrevocable easement in the dedicated land.' "  *Id*., quoting *Little v Hirschman*, 469 Mich 553, 561-562, 564; 677 NW2d 319 (2004).  Private dedications occurring after the 1966 effective date of the Land Division Act "convey[] a fee interest."  *Id*.

The scope of a dedication is governed by the dedicator's intent.  *Higgins Lake*, 255 Mich App at 88, 100-101.  When disputes arise over a dedication, the "use for which the dedication was made must determine the extent of the right parted with by the owner of the land and acquired by the public."  *Baum Family Trust*, 488 Mich at 147 (quotation marks and citation omitted).  In other words, the backlot owners' use is constrained by the dedication's scope.  *Dobie v Morrison*, 227 Mich App 536, 541; 575 NW2d 817 (1998).  If the text of a dedication is ambiguous, the trial court may consider evidence of the circumstances that existed at the time of the dedication to discern the dedicator's intent.  See *Dyball*, 260 Mich App at 704-705.

The trial court considered evidence submitted by Kussy demonstrating that around the time of the 1935 dedication, the park shoreline was being used to maintain docks and moor boats.  Kussy presented evidence that the Brockway family took their backlot with the "understanding" that the previous lot owners had maintained a seasonal dock in the water since at least 1936.  The Brockways offered photographs of this dock dated from the 1930s and 1940s.  Kussy also presented photographs from a book entitled "Hubbard Lake Michigan, Panoramas and Personalities, Vol 2," written by Mike Cornelius.  These photographs clearly show a number of boats and docks along the park shoreline, many more than the number of homes across Lake Street from the park.  This evidence demonstrated a consistent use by backlot owners to dock and moor boats along the park shoreline.

The dedication's scope, however, is not the only restriction on a backlot owner's use; the use cannot "unreasonably interfere with plaintiffs' use and enjoyment of their property."  *Dobie*, 227 Mich App at 541.  See also *Little*, 468 Mich at 701.  Brown presented no evidence that Kussy's dock or boat, or anyone else's dock or boat, interfered with his use of his property.  Indeed, Brown had his own dock in the water, and there is no evidence that any backlot owners trespassed on Brown's personal lot to use the park or attached docks.

Brown compares the facts of the current case to *Dyball*, which, as noted above, included very different dedication language.  Brown's comparison of this case to *Jacobs v Lyon Twp (After Remand)*, 199 Mich App 667; 502 NW2d 382 (1993), is also unavailing.  In *Jacobs*, 199 Mich

App at 669, there was a "statutory dedication of the streets in the original plat 'to the use of the Public.'" The question in *Jacobs* was the scope of use permitted where public roads terminated at the water's edge. Caselaw established that the local government could erect public wharves and docks at those locations and that the public could access the water from those areas. *Id.* at 671-672. The plaintiff attempted to prove that the plat dedication included the public's right to use the road terminus for all sorts of beach and water activities. But the historical evidence presented all arose at least 20 years after the dedication. *Id.* at 672. Moreover, the evidence presented was not specific to the area at issue in *Jacobs*, it was more general to the entire shoreline in the area. *Id.* Based on the evidence, this Court held, "it appears likely that there would have been no intent on the part of the platter in 1902 to include, as part of the dedication of the roads to the public, anything more than access to the lake." *Id.* at 673. The evidence in this case is not akin to that presented in *Jacobs*. The photographs in this case were taken close in time to the dedication and were specifically of the area in dispute.

Brown also briefly argues that the trial court used laches and estoppel to alter the scope of the dedication and contends that equity may not be used in this manner. However, Brown abandoned this claim by failing to city any authority for this proposition. "An appellant may not merely announce his or her position and leave it to this Court to discover and rationalize the basis for his or her claims." *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 695; 880 NW2d 269 (2015) (quotation marks and citation omitted). In any event, Brown's claim is not factually supported. The trial court's decision clearly reflects that it found the photographs and statements from other lot owners persuasive in supporting that the plattor intended for docks and boats to be a part of the Park's use.[5]

## IV. LITTORAL RIGHTS

On cross-appeal, Kussy argues that the trial court erred by determining that Brown had "exclusive" littoral rights. The court expressly rejected that Brown had "exclusive" rights, instead holding that he possessed littoral rights limited by the scope of the dedication. A close reading of Kussy's brief on cross-appeal reveals that he actually contends that Brown is not a littoral owner and possesses no littoral rights.

"Riparian rights are property rights," and the owners of such rights hold the "right to erect and maintain docks, as well as to permanently anchor boats off the shore." *Baum Family Trust*, 488 Mich at 166. If Brown has littoral rights, he will be permitted to erect and maintain a permanent dock while the backlot owners will be limited to seasonal, nonpermanent docks. If Brown does not have littoral rights, he will be subject to the same limitations.

---

[5] Brown spills much ink discussing why Kussy could not maintain a dock or moor a boat at the end of one of the publicly dedicated streets that ran perpendicular to and ended at Lake Street. There is an entire body of caselaw addressing the activities the public may engage in on a public road that ends at the water's edge. However, this is a nonissue because Kussy agreed that he could not use this road end in such a way. Moreover, he agreed that the street does not end at the water's edge but, rather, has its terminus at Lake Street. We therefore will not address these arguments.

Generally, land must touch the water in order to carry littoral rights. Logically, it follows that most of the time, "the interposition of a fee title between upland and water destroys riparian rights, or rather transfers them to the interposing owner." *Id.* at 167 (quotation marks and citation omitted). However, littoral rights are not destroyed when "property is separated by a public road running parallel to the water." *Id.* at 171. In such instances, a property owner whose land abuts a publicly dedicated road holds "a reversionary interest to the center of the street." *Id.* at 155. This means that, if the public street were to be vacated or abandoned, the land subsequently "reverts to the abutting owner or owners." *Id.* at 155 (quotation marks and citation omitted). Moreover, the government entity

> does not receive "title in the nature of a private ownership"; it "acquires no beneficial ownership of the land" and "has no voice concerning the use"; and it does not possess "the usual rights of a proprietor," but rather takes title only to the extent that it could "preclude questions which might arise respecting the public uses, other than those of mere passage . . . ." [*Id.* at 163 (citations omitted).]

In other words, the governmental entity receives mere "*nominal* title," also called a "base fee." *Id.* at 163-164 (quotation marks and citations omitted; emphasis in original).

A similar exception has been applied when a *privately* dedicated right of way lies between the water's edge and the parties' property:

> Unless a contrary intention appears, owners of land abutting any right of way which is contiguous to the water are presumed to own the fee in the entire way, subject to the easement. Since the owner's property is deemed to run to the water, it is riparian property. [*Thies v Howland*, 424 Mich 282, 293; 380 NW2d 463 (1985).]

In *Thies*, our Supreme Court upheld the trial court's finding that the scope of a 1907 plat dedication did not grant the defendants the right to erect docks or permanently moor boats. *Id.* at 295. At issue was a 12-foot " 'walk' " that ran adjacent and parallel to Gun Lake. *Id.* at 286. This walkway abutted the plaintiffs' lot and separated it from the lake's edge, and the defendants owned lots that did not abut this walkway. *Id.* The walkway was dedicated " 'to the joint use of all the owners of the plat.' " *Id.* at 293. Our Supreme Court held that this language "standing alone does not ordinarily denote the passing of a fee interest in land." *Id.* Therefore, the Court concluded that the plaintiffs owned in fee the portion of the walkway that was adjacent to their lots and also had littoral rights. *Id.* at 293-294.

In this case, both a publicly dedicated road and a privately dedicated "park" separated Brown's property from the water's edge. As such, we find this Court's opinion in *Dobie*, 227 Mich App 536, controlling. The plaintiffs in *Dobie* owned property separated from the lakeshore by a "park" that had been dedicated "to 'the use of the owners of lots in this plat which have no lake frontage.' " *Id.* at 537. This court distinguished *Dobie* from *Thies* on the ground that *Thies* involved only a 12-foot-wide walkway while Dobie involved a "relatively large park." *Id.* at 539. This Court held, "Absent a contrary indication, it is eminently reasonable to presume that a walkway along a lake was placed merely as an easement to provide access to the lake and not with the intent to convey actual fee ownership of the land containing the walkway. The same is simply not true of the relatively large park in this case." *Id.* at 539-540.

This Court in *Dobie*, 227 Mich App at 540, nonetheless affirmed the trial court's determination that the plaintiffs "retained their ownership in fee and, thus, their riparian rights, to the park." (Citation omitted.) The plaintiffs retained their rights "because the undisputed facts in the record establish that the plattors intended that the park dedication convey merely an easement, not a fee in the park, to all back lot subdivision owners." *Id*. The intent of the plattors in creating the park was determined "with reference to the language used in connection with the facts and circumstances existing at the time of the grant." *Id*.

Just as in this case, the plat in *Dobie* dedicated the park for the "use" of the lot owners and did not purport to transfer ownership to all the lot owners. *Id*. The *Dobie* Court found "the language used to be more consistent with the grant of an easement rather than a grant of fee ownership rights." *Id*. We find the same here.

In *Dobie*, 227 Mich App at 541, further evidence of the plattor's intent was found in the plattor's acts of personally providing electricity and amenity to the park area. This suggested that the plattor retained fee ownership in the park land. The plattor then transferred his personal home lot to the plaintiffs in *Dobie*. *Id*. Although similar evidence is not available in this case, the record evidence did suggest that the backlot owners had limited their use to temporary, seasonal docks instead of permanent structures since the beginning of the dedication. This too suggests that littoral rights were intended to flow to the lake-facing properties. On this record, we discern no error in the trial court's conclusion that Brown possessed littoral rights.

We affirm.

/s/ Brock A. Swartzle
/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly